194 So.2d 658 (1967)
Alexander BREST, Appellant,
v.
JACKSONVILLE EXPRESSWAY AUTHORITY, a Corporate Agency of the State of Florida, Appellee.
No. H-390.
District Court of Appeal of Florida. First District.
January 19, 1967.
Rehearing Denied February 22, 1967.
*659 Greene, Greene, & Kennelly, Jacksonville, for appellant.
Jones, Foerster & Hodge, Jacksonville, for appellee.
JOHNSON, Judge.
This is an appeal from a final judgment of condemnation against the owner of certain property, the appellant herein.
The facts appear from the record to be that the appellee, who was the petitioner in condemnation proceedings in the Duval Circuit Court, filed a petition for condemnation and a declaration of taking of a parcel of land belonging to the appellant. It is alleged in both the petition and declaration of taking that the property to be acquired by these eminent domain proceedings is for a public necessity, for use in the construction of the Jacksonville Expressway System. The lands desired are described *660 in both the petition and declaration of taking.
The appellant-owner filed his motion to dismiss the petition and to quash the declaration of taking. At the hearing on said motions it was shown and is now a part of the record before us, that the appellee had entered into an agreement to immediately convey the lands proposed to be condemned to a private corporation in exchange for certain lands of the private corporation; that the land proposed to be acquired was not within the survey and plan of the proposed Expressway, but the land of the private corporation was. That there was a railroad on the property of the private corporation, operating under lease. No denial was made of the intention of the condemning authority as to its proposal. In fact the agreement was filed in evidence and so was the plat and survey sheet of the proposed expressway, which conclusively showed that the land being condemned was not in actuality to be a part of the expressway system but lay outside any land needed for the construction of said expressway.
The true fact is, the land to be acquired was for the purpose of relocating a private railroad track thereon in exchange for the parcel where the railroad track was then located, so that said latter parcel could be used in the expressway system.
The defendant's motion to dismiss the petition and quash the declaration of taking was based upon the one fact that the condemnation of defendant's property was for the private use of Buckman, Ulmer & Mitchell, Inc., a private corporation and not for use in the construction of the Jacksonville Expressway System.
We think the court was in error in denying the motion to dismiss and to quash the declaration of taking for the reasons hereinafter appearing.
The exercise of the power of eminent domain is one of the most harsh proceedings known to law and therefore, when the sovereign delegates the power to a political unit or agency a strict construction will be given against the agency asserting the power.[1]
The decision of the Florida courts that private property may not be taken by eminent domain for any use other than a public use are too numerous to need citing, but a good example of our courts' holding may be found in Demeter Land Co. v. Florida Public Service Co., 99 Fla. 954, 128 So. 402 (1930).
We are familiar with the decisions of our courts also, which hold that the question of necessity as determined by the condemning authority will not be set aside in the absence of a showing of fraud or abuse of discretion, or unless it be made to appear that the action taken by such board or condemning authority was without lawful authority, or was beyond the authority conferred upon them by law.[2]
Great weight should be given to the authority's determination of necessity, but in the case sub judice, we think the agreement between the Expressway Authority and the private corporation and the plat showing the location of the expressway right of way and the land to be taken, both of which were filed in evidence, was sufficient to show an abuse of discretion and that the action of the Expressway Authority was unlawful and beyond the authority conferred upon the Expressway Authority by law.
The fact that the property described in the petition and declaration of taking is located in close proximity of the proposed project, and the fact that it would be much cheaper for the expropriating authority to condemn the defendant's property, and relocate *661 the private railroad on the property so acquired in exchange for the property on which the railroad track was already located, is immaterial and cannot be used as a guide line in determining either that the taking is necessary or that it is for a public purpose. To hold otherwise would open the door wide open for abuse and would permit a condemning authority to make a deal with the owner of private property to condemn a parcel of more desirable property, maybe in a better neighborhood or on a more economically strategic corner upon which to relocate the private owner's motel or building, in exchange for the parcel needed by the expropriating authority. This would be contrary to all our decisions and contrary to both the Federal and State Constitutional provisions safeguarding property rights.
The Legislature cannot under the guise of exercising sovereign power of eminent domain, which can only be exerted for a public purpose, take a citizen's property without his consent and give or sell it to another for private use, even though compensation is paid therefor, for to do so would be in violation of the Constitution of the United States Amendment 14. Also the power to take private property is in every case limited to such and so much property as is necessary for the public use in question. Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488 (1929). Otherwise, due process of law would be denied the property owner.
It might be further pointed out in the case sub judice, that if it is necessary for the construction of the Expressway System to acquire the property of Buckman, Ulmer and Mitchell, Inc., which is now under lease to one or more railroad companies and upon which the railroad tracks now stand, this can be acquired by proper condemnation. If Buckman, Ulmer and Mitchell, Inc., and/or the railroads find it expedient to relocate the tracks on the defendant's land, then this is a private matter and subject to negotiation between the private parties. The Expressway Authority is under no legal obligation to Buckman, Ulmer and Mitchell, Inc., for anything except proper compensation for the land to be taken. Certainly, the power of the Expressway Authority should not be exercised as a club against the defendant Brest in the private negotiations.
For the reasons stated, the final judgment is reversed, set aside and the petition to condemn is dismissed and the declaration of taking quashed.
RAWLS, C.J., concurs.
WIGGINTON, J., dissents.
WIGGINTON, Judge (dissenting).
I am in agreement with the general principles of law set forth in the majority opinion, but am of the view that they have no application to the particular facts of this case. No one will dispute the proposition that under our law of eminent domain a public body may not exercise that power by condemning private property for the purpose of transferring such property to another private owner for private use. That is not what is involved in the case sub judice.
The record in this case reveals that the small parcel of land owned by appellant and sought to be appropriated by appellee is only a minute part of a large program of acquisition by appellee of property needed for the construction of the Jacksonville Expressway System. This acquisition program included a parcel of land on which a private railway system was located. The parcel of land owned by appellant adjacent to the road right-of-way is required for use in relocating the railroad so that its continued operation will not be lost to the public. The relocation of the railroad in question is just as an essential phase of the construction of the Jacksonville Expressway System as is the construction of the roads, bridges, and viaducts which form its integral parts. There is no suggestion in the record, nor *662 is it urged by appellant herein, that in making its determination that acquisition of appellant's land is necessary in the construction of the expressway system appellee was motivated by fraud or bad faith.
In Gate City Garage v. City of Jacksonville,[1] our Supreme Court considered the validity of a municipal bond issue, the proceeds of which were to be used for the purpose of acquiring land for off-street parking of motor vehicles. The validity of the bond issue was challenged on the ground that the funds to be derived from the sale thereof would be used for the acquisition of private property which would be devoted to a private as distinguished from a public purpose. The reservation in the city of the authority to lease a filling station on the property was contended by the opponents of the bond issue to be the equivalent of taking one man's property by public authority under the power of eminent domain and leasing it to another for private gain, all in contravention of the constitutional provisions requiring that property may be acquired by eminent domain only for public purposes. In rejecting this contention the Supreme Court said that the constructing and leasing of a filling station on a parking lot the size of that contemplated by the city in that case is a mere incident, the primary purpose being to acquire and construct a parking lot to serve a public and municipal purpose. In its opinion, the court quoted from its prior decision in Adams v. Housing Authority of City of Daytona Beach[2] as follows:
"`It should be noted that the plan does not simply provide for the sale or lease of a small portion of the property which may not be needed for housing purposes, and is, therefore, incidental, but it provides for the lease or sale of "all real property within the project area."'"
In Gate City Garage, supra, the Supreme Court also quoted with approval the rule enunciated in 18 Am.Jur. 669  Eminent Domain, § 41, as follows:
"`The general rule is settled that the exercise of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that incidentally a private use or benefit will result which will not itself warrant the exercise of the power.'"
In State ex rel. Ervin v. Cotney[3] the Attorney General of Florida attacked a special act adopted by the legislature creating the Clay County Development Authority. The Attorney General contended that the act constituted an invalid attempt by the legislature to create and confer upon a public corporation the power to loan its credit to private interests and to acquire property to be developed for private interests in contravention of the Constitution which prohibits the enactment of legislation authorizing a city or county to obtain or appropriate money for, or loan its credit to, any corporation, association, institution, or individual. The court acknowledged the general rule to be that a public body may not use its power of eminent domain to acquire property for the sole purpose of making such property available to private enterprises for private use. In upholding the validity of that act, however, the Supreme Court said:
"It is equally clear from subsequent decisions of this court that, if a valid public purpose will be effectuated by a proposed plan of acquisition and/or improvement of property by a public body, the fact that a sale or lease of a portion of the improvement to private parties was contemplated will not invalidate the plan. * *"
*663 Nichols, in his work on eminent domain,[4] says:
"Under certain extraordinary conditions the conventional method of compensating an owner whose property is taken by proceedings in eminent domain by paying him the value thereof is completely inadequate. To do complete justice to such an owner and, what is even more important, to meet the practical problems which arise by reason of the taking, it becomes necessary to furnish such owner with other lands as a substitute for the lands which have been taken. The question then arises whether or not such substituted lands may be acquired by eminent domain by the original condemnor, either in the original or a supplemental proceeding, for the use of the owner who has been forced to give up his property for a conceded public use. Is such secondary acquisition of property to be considered for a public use?
"The question has been answered in the affirmative not only in jurisdictions which subscribe to the liberal interpretation of `public use' but even in those where the narrow doctrine ordinarily prevails. Thus, where part of a railroad right of way is condemned for the purpose of widening a state highway, the state may also condemn other property to be used by the railroad as a substituted right of way for the one originally taken. * *"
My review of the record in the case sub judice convinces me that the comprehensive plan adopted by appellee Expressway Authority for the construction of the Jacksonville Expressway System serves a public purpose, and the acquisition of appellant's small parcel of land for use in relocating the private railway system theretofore operating on other lands acquired and used by appellee in the furtherance of its plan of improvement is merely incidental to the overall acquisition program. The fact that appellant's land will be transferred to private ownership in the relocation of the railroad should not operate to invalidate the plan of acquisition inaugurated by appellee, nor is it lawful grounds for preventing the exercise of its power of eminent domain by appellee in this case.[5] It is my view that the trial court was correct in rejecting appellant's assault on the right of appellee to maintain this action, and the judgment appealed should be affirmed.
NOTES
[1] 12 Fla.Jur. p. 15; Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488 (1929).
[2] Wilton v. St. Johns County, supra.
[1] Gate City Garage v. City of Jacksonville (Fla. 1953), 66 So.2d 653, 659.
[2] Adams v. Housing Authority of City of Daytona Beach (Fla. 1952), 60 So.2d 663.
[3] State ex rel. Ervin v. Cotney (Fla. 1958), 104 So.2d 346, 348.
[4] 2 Nichols on Eminent Domain 667, 668, § 7.226 (1963).
[5] 26 Am.Jur.2d 732, § 72; Brown v. United States (1923), 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; Dohany v. Rogers (1930), 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904; Mississippi State Highway Commission v. Morgan (1965), 253 Miss. 398, 175 So.2d 606.