THE CITY OF CHARLOTTE v. J. ERNEST COOK; AND WIFE, RUBY H. COOK

THE CITY OF CHARLOTTE v. J. ERNEST COOK; AND WIFE, RUBY H. COOK; AND CRESCENT ELECTRIC MEMBERSHIP CORPORATION

No. 83PA97

(Filed 8 May 1998)

**Eminent Domain § 29 (NCI4th)— condemnation for water pipeline—fee simple rather than easement—no abuse of discretion**

A city's condemnation of a fee simple estate rather than an easement in property for a water pipeline to connect an intake structure at a lake with a water treatment plant was not arbitrary, capricious, or an abuse of discretion where the city presented evidence that it was necessary to acquire a fee simple title to the

property because of the depth at which the pipeline will be laid, the number and nature of the facilities that will be constructed close to the pipeline, the need to have effective control over all uses of the pipeline route, and the ability to select the most economical electric supplier. The city did not have to show that it would be impossible to construct a pipeline using an easement but had to show only that it needed a fee simple title to construct and operate the pipeline under optimum conditions.

Justice LAKE dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 125 N.C. App. 205, 479 S.E.2d 503 (1997), vacating judgments entered by Sitton, J., on 6 December 1995, in Superior Court, Mecklenburg County. Heard in the Supreme Court 11 September 1997.

This appeal involves a question as to the power of a city to condemn property. The City of Charlotte filed actions to condemn a fee simple interest in two tracts of land in Mecklenburg County for the laying of a pipeline as a part of the North Mecklenburg Raw Waterline Project. Defendants Cook owned the property to be condemned, and defendant Crescent Electric Membership Corporation had an option to purchase one of the tracts. The two actions were consolidated by consent for trial.

The project being constructed by the Charlotte-Mecklenburg Utility Department (CMUD) will supply additional drinking water for Mecklenburg County. The pipeline to be constructed across the land will connect the raw water intake structure on Lake Norman and a water treatment plant in north Mecklenburg County.

A hearing pursuant to N.C.G.S. § 136-108 was held to determine all issues except compensation. In his judgments, Judge Sitton found the following facts:

17. The decision by the City of Charlotte to acquire the route for the pipeline in fee simple was based on a number of factors, including, but not limited to the following:

a. the depths (up to 40 feet deep) at which the 60-inch diameter pipes will be installed;

b. the number and nature of the facilities that will be located within the pipeline route;

CITY OF CHARLOTTE v. COOK

[348 N.C. 222 (1998)]

c. the ability to exercise effective control over all uses of the pipeline route by having the ability to determine in advance any proposed use[] of the pipeline route which would be permitted by the City;

d. the ability to protect the pipeline facilities more effectively than if the City of Charlotte only had an easement[;]

e. the cost[s] for acquisition of a fee simple interest were not anticipated to be significantly different than for the acquisition of an easement;

f. the ability to select the most economical electric power supplier.

Based on these findings of fact, Judge Sitton allowed the plaintiff to acquire a fee simple estate in the property. The Court of Appeals vacated the judgments, and we allowed discretionary review.

*Office of the City Attorney, by H. Michael Boyd, Senior Deputy City Attorney, and R. Susanne Knox, Assistant City Attorney, for plaintiff-appellant.*

*Bailey, Patterson, Caddell, Hart & Bailey, P.A., by Allen A. Bailey and H. Morris Caddell, Jr., for defendant-appellees J. Ernest Cook and Ruby H. Cook.*

*Crisp, Page & Currin, L.L.P., by Cynthia M. Currin and Tyrus H. Thompson, for defendant-appellee Crescent Electric Membership Corporation.*

*North Carolina League of Municipalities, by Andrew L. Romanet, Jr., General Counsel, and John M. Phelps, II, Assistant General Counsel, amicus curiae.*

*Michael F. Easley, Attorney General, by Grayson G. Kelley and Robert G. Webb, Special Deputy Attorneys General, and John F. Maddrey, Assistant Attorney General, on behalf of the North Carolina Department of Transportation, amicus curiae.*

WEBB, Justice.

The Court of Appeals held that a condemning agency cannot take a larger estate in the condemned land than is necessary to carry out the public purpose for which the land is condemned. For this reason, said the Court of Appeals, the City could condemn only an easement in the property. We disagree with the Court of Appeals.

## CITY OF CHARLOTTE v. COOK

[348 N.C. 222 (1998)]

In *Raleigh & Gaston R.R. Co. v. Davis*, 19 N.C. 451 (1837), we dealt with the condemnation of land for the construction of a railroad. Chief Justice Ruffin, writing for the Court, explained the nature of the power of eminent domain. He pointed out that unlike the federal government, which has only those powers delegated to it by the people through the Constitution of the United States, the government of our state has all the power necessary to exercise its sovereignty. *Id.* at 457. This sovereign power may be restricted only by the state or federal Constitution. The right of eminent domain is one of the sovereign powers. Chief Justice Ruffin said it is for the legislature to determine whether private property should be taken and to what extent. *Id.* at 467.

Following *Rail Road*, we have developed a rule governing the taking by the State of private property. Property may be condemned only for a public purpose, and the Judicial Branch of the government determines whether a taking is for a public purpose. The Legislative Branch decides the political question of the extent of the taking, and the courts cannot disturb such a decision unless the condemnee proves the action is arbitrary, capricious, or an abuse of discretion. *City of Charlotte v. McNeely*, 281 N.C. 684, 690, 190 S.E.2d 179, 184 (1972); *N.C. State Highway Comm'n v. Farm Equip. Co.*, 281 N.C. 459, 470, 189 S.E.2d 272, 278 (1972); *Town of Morganton v. Hutton & Bourbonnais Co.*, 251 N.C. 531, 533, 112 S.E.2d 111, 113 (1960).

It is unquestioned that the taking in this case was for a public purpose. The question then becomes whether the defendants have shown that the action of the City in condemning a fee simple estate was arbitrary, capricious, or an abuse of discretion. We cannot so hold.

The Charlotte City Council held two public hearings before authorizing the commencement of the condemnation proceedings. An affidavit by Thomas W. Vandeventer, a professional engineer, was submitted to the Council. Mr. Vandeventer said in his affidavit that it was necessary to acquire a fee simple title to the property because of the depth at which the line would be laid, the facilities that will be constructed close to the line, and the need to have effective control over all uses of the pipeline route. Mr. Vandeventer also said that CMUD had experienced difficulties in other places where facilities were within easements rather than on property owned in fee.

The defendants filed an affidavit by James Roderick Butler in which Mr. Butler refuted the reasoning of Mr. Vandeventer and concluded that there was no reason for CMUD to have more than an ease-

ment in the property in order to lay the line. There was conflicting evidence in the affidavits of the two engineers, and we cannot disturb Judge Sitton's decision to accept the testimony of Mr. Vandeventer. This testimony supports findings of facts (a) through (d). There was also evidence that if the plaintiff did not have a fee simple title to the property, it could not buy power from Duke Power Company but would have to purchase power from Crescent at a higher rate. *See Crescent Elec. Membership Corp. v. Duke Power Co.*, 126 N.C. App. 344, 485 S.E.2d 312 (1997). This evidence supports finding of fact (f). The findings of fact support the conclusions of law that the City may take a fee simple title in the property.

The defendants argue that the City of Charlotte has admitted that a fee simple title is not necessary for the construction of the line. They base this argument on statements made by a deputy city attorney at a meeting of the City Council, who said, "It is possible that an easement could be used," and that the plaintiff could acquire additional rights in the property if needed. They also rely on a statement at the Council meeting by the director of CMUD, who said when asked if it was possible with an easement to accomplish CMUD's purposes, "[I]t is technically possible, but not preferable."

We do not believe the statements show a fee simple title is not necessary. The City does not have to show it would be impossible to construct a line using an easement. If the City can show that it needs a fee simple title to construct and operate the line under optimum conditions, this is proof of necessity.

The defendants contend that the affidavit of Mr. Vandeventer is not credible, especially when compared to the affidavit of Mr. Butler. The credibility of the respective affidavits was for the City Council and the superior court to determine. We cannot overrule their findings.

The City took only an easement for the intake site on Lake Norman, and the defendants contend this shows the plaintiff did not need a fee simple title in their property. We do not know why the plaintiff acquired only an easement for the intake facility. The fact that it did so does not mean it does not need a fee simple title in the property involved in this case.

The mayor pro tem of the City was an employee of Duke Power Company. The mayor was absent from the meeting at which the City Council voted to condemn the property, and the mayor pro tem

**CITY OF CHARLOTTE v. COOK**

[348 N.C. 222 (1998)]

presided over the meeting. The mayor pro tem voted to condemn a fee simple title. He filed an affidavit in which he said that if he had known Duke Power Company was involved in the matter, he would not have participated in the meeting. There was some evidence that he knew Duke was involved. The defendants say this makes the action by the Council arbitrary and capricious. We cannot so hold. An ethical problem involving the Council has to rise to a much higher level than this one for us to upset a decision by the Council.

The defendants next say that the Council's action must be set aside because Robert's Rules of Order were not followed at the meeting at which the decision was made to condemn a fee simple interest. We do not know what rules the City Council follows, but we shall let it judge its own procedure.

For the reasons given in this opinion, we reverse the Court of Appeals and remand to that court for further remand to the Superior Court, Mecklenburg County, for reinstatement of the judgments.

REVERSED AND REMANDED.

Justice LAKE dissenting.

I must respectfully dissent because I believe this decision, while satisfying two of our corporate giants, works a grave injustice upon innocent and powerless people and impairs the law on the taking of private property for a public purpose.

The simple and uncontroverted facts in this case are as follows. The City of Charlotte (the City) is building a pipeline to carry water from an intake center on Lake Norman to a new treatment plant for the purpose of providing the City with additional drinking water. The proposed route crosses defendant Cooks' family dairy farm. The design calls for the pipeline to be buried as much as forty feet underground, and the pipe is to be only five feet in diameter.

Evidence indicates that city officials knew it was necessary to acquire only an easement across the Cooks' property in order to install the pipeline and to service it in the future. A deputy city attorney told the City Council, "It is possible that an easement could be used," and the director of the Charlotte-Mecklenburg Utility Department told the City Council, "it is technically possible" to accomplish the project's purposes with only an easement. In fact, *the initial proposal for the project was to acquire only an ease-*

*ment,* and landowners were so informed by city officials at public hearings.

Interestingly, and perhaps not insignificantly, the Cooks' property is located in territory which the North Carolina Utilities Commission has assigned exclusively to Crescent Electric Membership Corporation (Crescent). The City would have to buy power for the new plant from Crescent if the City acquired only an easement across the Cooks' property. However, if the City owned contiguous tracts of land on which the pipeline and plant were constructed, the City would have the right under N.C.G.S. § 62-110.2 to buy electric power from Duke Power Company (Duke Power).

The record evidences multiple Duke Power internal e-mail messages and memoranda reflecting that Duke Power and the City collaborated to have the City acquire a fee simple title to the property in order that Duke Power could provide the power to the plant. These e-mail messages indicate that the mayor pro tempore of the City, an employee of Duke Power, as well as the project director had contact with Duke Power officials and discussed condemning a fee simple interest for the project. The mayor pro tempore chaired the 12 September 1994 City Council meeting where the subject of condemning a fee simple was discussed, and he voted in favor of a fee simple condemnation. In the entire project, the only parcel of land upon which the City settled for an easement instead of a fee simple title was that parcel where the intake structure was to be located. The intake structure is one of the most important sites in the project, and it will have employees working at the location. The pipeline between this intake and the plant, through the Cooks' property, will merely pass underground. Record evidence establishes that Duke Power has property rights in the land on which the intake structure will be constructed.

It has been the well-settled law in this state for over three-quarters of a century that a governmental body may condemn only the amount of property necessary to achieve the specific public purpose which required the condemnation. In *Spencer v. Wills,* 179 N.C. 175, 102 S.E. 275 (1920), this Court stated, "Condemnation by right of eminent domain is not allowed except so far as it is *necessary* for the proper construction and use of the improvement *for which it is taken." Id.* at 178, 102 S.E. at 277 (emphasis added). Similarly, in *Jennings v. State Highway Comm'n,* 183 N.C. 69, 110 S.E. 583 (1922), this Court noted that in a condemnation proceeding, "the well con-

**CITY OF CHARLOTTE v. COOK**

[348 N.C. 222 (1998)]

sidered cases on the subject hold that when the Legislature has not defined the extent or limit of the appropriation, the authorities charged with the duty are restricted to such property *in kind and quantity* as may be reasonably suitable and necessary to the *purpose designated.*" *Id.* at 71-72, 110 S.E. at 584 (emphasis added). In *N.C. State Highway Comm'n v. Farm Equip. Co.*, 281 N.C. 459, 189 S.E.2d 272 (1972), this Court recognized that when a condemning authority seeks to take the property of a citizen, " 'the power to take private property is in every case limited to *such* and *so much* property as is necessary for the public use in question.' " *Id.* at 473, 189 S.E.2d at 280 (quoting *Brest v. Jacksonville Expressway Auth.*, 194 So. 2d 658, 661 (Fla. Dist. Ct. App.), *aff'd per curiam*, 202 So. 2d 748 (Fla. 1967)). Moreover, in *Highway Comm'n*, Justice Sharp (later Chief Justice) emphasized that it is unconstitutional for a governmental body to condemn property for private purposes:

> "The Legislature cannot under the guise of exercising sovereign power of eminent domain, which can only be exercised for a public purpose, take a citizen's property without his consent and give it or sell it to another for private use, . . . for to do so would be in violation of the Constitution of the United States Amendment 14."

*Highway Comm'n*, 281 N.C. at 473, 189 S.E.2d at 280 (quoting *Brest*, 194 So. 2d at 661).

These cases stand for three basic principles. First, a condemning authority may take only the amount of property and interest *necessary* to achieve the public use, not the amount it simply wants or prefers. Second, the property may be condemned only for a *public purpose*, not for the private purposes of government officials or third parties. Finally, the property taken must be for the direct public use *in question*, not some other, collateral purpose. The reason for these requirements is the protection of private property under the state and federal Constitutions. *See, e.g., Highway Comm'n*, 281 N.C. 459, 189 S.E.2d 272; *Trustees of the Univ. of N.C. v. Foy*, 5 N.C. 58 (1805).

In this case, it is not necessary for the City to have fee simple title to the Cooks' property. The City has admitted the public use can be achieved fully with a properly drafted easement. It is thus clear that the City simply prefers to have a fee simple title for its own convenience or purpose extending well beyond the public use in question. Governmental convenience is not synonymous with necessity, especially when private property is at stake. The public use in question for

ELLIOTT v. N.C. PSYCHOLOGY BD.

[348 N.C. 230 (1998)]

the taking here is the construction of a water supply pipeline, not the City's preference for one electric supplier over another. The proper determination of the entity that provides electricity to a water treatment plant is entirely separate from the proper construction and maintenance of a water pipeline.

Had the excellent unanimous opinion of the Court of Appeals been affirmed, as it should have been, the practical effect of such decision would be that the City would get an easement to bury its pipeline underground and to maintain it in the future, and the Cooks would still be able to use their property as a dairy farm, as they have since at least the early 1960s. Private property rights would be respected, and the legitimate public use in question would proceed unimpeded. The result of the majority's decision will be to split the Cooks' dairy into two separate, disjointed parcels and keep them from using the land even for grazing. The decision will also allow the improper use of the power of eminent domain to circumvent the intent and purpose of the carefully devised statewide legislative plan for settlement of electric service areas between electric suppliers, pursuant to N.C.G.S. § 62-110.2.

In light of the law and facts of this case, simple justice and basic principles require that we affirm the opinion of the Court of Appeals. However, it appears in this case that, " 'Justice is blind.' Blind she is, an' deef an' dumb an' has a wooden leg." Finley Peter Dunne, *Mr. Dooley's Opinions* (1900), *in The Harper Book of American Quotations* 306 (Gorton Carruth & Eugene Ehrlich eds., 1988).