TRANSCONTINENTAL GAS PIPE LINE CORP. v. CALCO ENTER.

[132 N.C. App. 237 (1999)]

TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner v. CALCO EN-
TERPRISES, a North Carolina Partnership, NORTH CAROLINA EQUIPMENT
COMPANY, PAUL E. CASTELLOE, Receiver by Court Appointment, RONALD H.
GARBER, Receiver by Court Appointment, MARY H. CALTON, Executrix of the
Estate of W.C. Calton, W.C. CALTON, JR., Executor of the Estate of W.C.
Calton, Respondents

No. COA98-687

(Filed 16 February 1999)

**1. Judges— one judge overruling another—Rule 12 motion to
dismiss—matters outside pleadings—not converted to
summary judgment—subsequent summary judgment rul-
ing—no error**

A trial court did not err when granting a motion for summary
judgment in a condemnation action by a natural gas company
where defendant had appealed to superior court from the clerk
of superior court, plaintiff had filed a Rule 12 motion to dismiss
which was denied, and plaintiff subsequently filed a motion for
summary judgment which was granted by a different judge.
Although defendant argued that the earlier motion to dismiss
was a motion for summary judgment because the trial judge con-
sidered the case file and briefs of counsel, that earlier motion
alleged that defendant had no standing to contest the clerk's
judgment and standing is treated differently because it is an
aspect of subject matter jurisdiction. The trial court is not
restricted to the face of the pleadings in making its determina-
tion on the issue of subject matter jurisdiction and the question
of subject matter jurisdiction may be raised at any time.
Accordingly, the original ruling did not preclude plaintiff from
raising the jurisdictional issue before the second judge.

**2. Jurisdiction— standing—condemnation—month-to-month
tenant**

A month-to-month tenant had standing to challenge an emi-
nent domain taking as arbitrary and capricious where the North
Carolina Equipment Company (NCEC) had leased land from
Calco Enterprises, a partnership formed to purchase land and
lease it to NCEC; Calco and NCEC had continued their arrange-
ment after the expiration of the written lease; the agreement was
not recorded; and petitioner Transcontinental Gas Pipe Line
Corporation (Transco) filed a petition to condemn the real estate
in question pursuant to its power of eminent domain. N.C.G.S.

§ 40A-28(c) does not prohibit NCEC's appeal because NCEC was made a party from the outset of the proceedings and, while the interest of a month-to-month tenant generally merits no compensation due to the difficulty of calculating the award, the actual owner of the property here (Calco) is only a legal entity created for the convenience of NCEC, the tenant. Denying NCEC standing effectively denies the party whose genuine interest is at stake the opportunity to protect that interest in court.

**3. Jurisdiction— standing—eminent domain—letter terminating tenancy**

A letter from a gas pipeline company purporting to terminate a month-to-month tenant's (NCEC) leasehold under N.C.G.S. § 40A-28(d) did not eliminate the standing of the tenant to challenge the taking under National Advertising Co. v. North Carolina Dept. of Transportation, 124 N.C. App. 620, because the plaintiff in National, unlike this case, had no interest in the property at the time it commenced its action for inverse condemnation.

**4. Eminent Domain— gas pipeline—public purpose—not arbitrary and capricious**

The trial court correctly granted summary judgment for Transcontinental Gas Pipe Line Corporation (Transco) in an eminent domain action on the issues of public purpose and arbitrariness and capriciousness. Condemning property for the transport of natural gas between states and for the distribution of natural gas within North Carolina is authorized by N.C.G.S. § 62-190 and a condemnation will not be invalidated when the taking is not arbitrary and capricious and is necessary to accomplish the purpose even where less intrusive means of accomplishing the purpose exist.

**5. Eminent Domain— appeal to clerk—summary judgment— permitted**

The North Carolina Equipment Company (NCEC) was not deprived of its statutory right to appeal from an order of the clerk of superior court to superior court by an order granting summary judgment. Because the appeal comes before the trial court as a civil matter de novo, N.C.G.S. § 1A-1, Rule 56 permits summary judgment. N.C.G.S. § 40A-28(c).

**6. Eminent Domain— pursuance of alternatives—summary judgment**

The trial court did not err by granting summary judgment for petitioner-pipeline company (Transco) in an eminent domain proceeding where the core of respondent's argument was that Transco did not pursue alternatives and that the taking was excessive and in bad faith. To prevail on its summary judgment motion, respondent would have to establish that there was no evidence in opposition to its allegation of bad faith; in fact, there was substantial evidence to contradict respondent's claim and to support petitioner's contention that it was acting in good faith.

Judge WYNN concurring.

Appeal by respondent North Carolina Equipment Company from order entered 24 February 1998 by Judge Peter M. McHugh in Forsyth County Superior Court. Heard in the Court of Appeals 14 January 1999.

*Womble Carlyle Sandridge & Rice, PLLC, by Michael E. Ray and Lynn Watson Neumann, for petitioner-appellee.*

*Hill, Evans, Duncan, Jordan & Davis, PLLC, by William W. Jordan and Joseph P. Gram, for respondent-appellant North Carolina Equipment Company.*

EDMUNDS, Judge.

Transcontinental Gas Pipe Line Corporation (Transco) is a Delaware corporation engaged in the business of transporting and delivering natural gas via pipeline from the Gulf of Mexico to the Northeastern United States. In order to expand its Kernersville delivery point, Transco filed a petition to condemn certain real property pursuant to its power of eminent domain under N.C. Gen. Stat. § 62-190 (1989) and Chapter 40A.

The property at issue is .210 acres of land owned by Calco Enterprises (Calco). Calco is a partnership formed to purchase land and lease it to North Carolina Equipment Company (NCEC). Calco and NCEC signed a five-year lease agreement dated 31 May 1988, which described a 3.156 acre tract in Forsyth County. In addition, Calco owned 6.2 acres adjacent to the property described in the written lease. NCEC and Calco also orally agreed for NCEC to lease the 6.2 acre tract for the term of the written lease. When the written

lease expired, Calco and NCEC continued their arrangement. The .210 acres of land in dispute are part of the 6.2 acre tract.

Because the agreement between Calco and NCEC was not recorded, Transco only discovered its existence during discussions with Calco prior to institution of this suit. On 2 July 1996, Transco petitioned to condemn the .210 acres, naming Calco, NCEC, and others as party opponents. NCEC initially responded by seeking just compensation, then later amended its response to the petition to allege that Transco's actions were arbitrary, capricious, and an abuse of discretion. On 29 July 1996, the Clerk of Superior Court appointed Commissioners to appraise the property and determine the compensation to be paid by Transco for the .210 acres. The Commissioners reported the value of the property to be $9,200. NCEC filed exceptions to the appraisal and to the Clerk's order of 29 July 1996. When the Clerk of Superior Court entered judgment overruling NCEC's exceptions on 29 August 1996, NCEC appealed that judgment to Superior Court on 9 September 1996. On 3 January 1997, Transco filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12 (1990), which Judge H. W. Zimmerman, Jr., ultimately denied on 10 February 1997.

On 7 February 1997, in its response to Transco's motion to dismiss, NCEC admitted that Transco had paid the judgment amount of $9,200 into the court. On 14 February 1997, Transco sent a letter to NCEC purporting to terminate NCEC's leasehold at the earliest date permitted by applicable law. On 27 August 1997, Transco filed a motion for summary judgment. NCEC thereafter responded and filed its own motion for summary judgment, supported by affidavits. On 24 February 1998, finding no genuine issue of material fact and that Transco was entitled to judgment as a matter of law, Judge Peter M. McHugh granted Transco's motion for summary judgment. From this order, NCEC appeals.

[1] Respondent-appellant NCEC first contends that the trial court committed reversible error when it granted Transco's motion for summary judgment after a previous motion to dismiss had been denied by another judge. We disagree. NCEC argues that the earlier motion to dismiss was in fact a motion for summary judgment because the trial judge considered matters beyond those in the pleadings. The trial judge's order, in fact, recites that the case file and briefs of counsel had been reviewed. "Where matters outside the pleadings are presented to and not excluded by the court on a motion to dismiss for

failure to state a claim, the motion shall be treated as one for sum-mary judgment. . . ." *DeArmon v. B. Mears Corp.*, 312 N.C. 749, 758, 325 S.E.2d 223, 229 (1985). Thus, under most situations, consideration of the court file, briefs, and attached affidavits would indeed convert a motion to dismiss into a motion for summary judgment pursuant to Rule 56. Where such conversion occurs, reconsideration of a motion for summary judgment by a second judge is precluded by the well-established rule in North Carolina that: (1) no appeal lies from one superior court judge to another; (2) one superior court judge may not correct another's errors of law; and (3) ordinarily one judge may not modify, overrule, or change the judgment of another superior court judge previously made in the same action. *See Calloway v. Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972).

However, in this case, Transco's original motion to dismiss alleged that NCEC had no standing to contest the clerk's judgment. Standing is treated differently than most other issues because it is an aspect of subject matter jurisdiction. *See Union Grove Milling and Manufacturing Co. v. Faw*, 109 N.C. App. 248, 426 S.E.2d 476, *disc. review allowed*, 333 N.C. 578, 429 S.E.2d 577, *and aff'd per curiam*, 335 N.C. 165, 436 S.E.2d 131 (1993). In determining the issue of sub-ject matter jurisdiction on a motion to dismiss, the court is not restricted to the face of the pleadings in making its determination. *See Cline v. Teich for Cline*, 92 N.C. App. 257, 374 S.E.2d 462 (1988). Furthermore, the question of subject matter jurisdiction may be raised at any time, even on appeal. *See Lemmerman v. Williams Oil Co.*, 318 N.C. 577, 350 S.E.2d 83, *reh'g denied*, 318 N.C. 704, 351 S.E.2d 736 (1986). "If a court finds at any stage of the proceedings that it lacks jurisdiction over the subject matter of a case, it must dismiss the case. . . ." *McAllister v. Cone Mills Corp.*, 88 N.C. App. 577, 579, 364 S.E.2d 186, 188 (1988). Accordingly, the original ruling did not preclude Transco from raising the jurisdictional issue before the sec-ond judge, who properly considered Transco's motion. This assign-ment of error is overruled.

[2] Transco again raises the issue of standing on appeal, contending that NCEC is a month-to-month tenant that lacks standing to chal-lenge the taking as arbitrary and capricious. Under the facts of this case, we do not agree. Chapter 40A details the power of eminent domain in North Carolina. N.C. Gen. Stat. § 40A-28(c) (1984) confers standing upon "[a]ny party to the proceedings," and grants such party the power to "file exceptions to the clerk's final determination on any exceptions to the report and [to] appeal to the judge of superior court

having jurisdiction." Here, NCEC was made a party from the outset of these proceedings initiated by Transco. Thus, the statute does not prohibit NCEC's appeal.

This Court has also said that "[t]he gist of standing is whether there is a justiciable controversy being litigated among adverse parties with substantial interest affected so as to bring forth a clear articulation of the issues before the court." *Texfi Industries v. City of Fayetteville,* 44 N.C. App. 268, 269-70, 261 S.E.2d 21, 23 (1979), *disc. review denied in part,* 299 N.C. 741, 267 S.E.2d 671, *and aff'd,* 301 N.C. 1, 269 S.E.2d 142 (1980). With regard to a zoning proceeding, this Court stated that a party must "own the affected property or have some interest in it" to challenge the proceeding. *See Wil-Hol Corp. v. Marshall,* 71 N.C. App. 611, 613, 322 S.E.2d 655, 657 (1984) (barring the zoning challenge of a month-to-month tenant whose challenge was initiated after the leasehold was terminated). The Court must therefore determine NCEC's interest, if any, in the condemned property.

Here, there was no written and thus no recorded instrument that represented NCEC's interest in the property condemned. However, Transco had actual notice that NCEC was in possession of and paid rent for the condemned property. "[W]hen a tenant enters into possession under an invalid lease and tenders rent which is accepted by the landlord, a periodic tenancy is created. . . . The period of the tenancy is determined by the interval between rental payments." *Kent v. Humphries,* 303 N.C. 675, 679, 281 S.E.2d 43, 46 (1981). Accordingly, we conclude that NCEC had a present possessory interest, namely, a month-to-month periodic tenancy, and that Transco was on notice of that interest. Thus, the key to deciding whether NCEC has standing in this suit is whether a month-to-month tenancy sufficiently solidifies the adversarial role so that the issues before the court are brought forth and clearly articulated. *See Texfi,* 44 N.C. App. 268, 261 S.E.2d 21.

Usually, a lessee has standing to litigate its portion of the total award upon condemnation. *See Durham v. Realty Co.,* 270 N.C. 631, 155 S.E.2d 231 (1967). However, the interest of a month-to-month tenant generally merits no compensation due to the difficulty of calculating its portion of an award. *See* 26 Am. Jur. 2d *Eminent Domain* § 259 (1996). Whether a month-to-month tenant has standing, not merely to challenge the apportionment of a condemnation award, but to challenge the condemnation proceeding itself as arbitrary,

capricious, and an abuse of discretion, is an issue of first impression in North Carolina. Therefore, we look to the applicable statutes for guidance.

Chapter 40A defines "owner" as "*any* person having an interest or estate in the property." N.C. Gen. Stat. § 40A-2(5) (1984) (emphasis added). Section 40A-25, dealing with private condemnations, is equally absolute and allows "all or any of the persons whose estates or interests are to be affected by the proceedings" to answer and show cause against granting the petition. N.C. Gen. Stat. § 40A-25 (1984). If our legislature had intended to give a diminished status to month-to-month tenancies, it could have expressly done so. While Calco is the actual owner of the property, it is only a legal entity created for the convenience of NCEC. Denying NCEC standing to pursue this case effectively denies the party whose genuine interest is at stake the opportunity to protect that interest in court. Accordingly, limited to the facts of this case, we find that NCEC's interest in the property is sufficient to maintain standing.

**[3]** Transco contends that pursuant to powers granted it by N.C. Gen. Stat. § 40A-28(d) (1984), the letter of 14 February 1997 terminated NCEC's tenancy and thereby eliminated its standing. We disagree. Transco cites *National Advertising Co. v. North Carolina Dept. of Transportation*, 124 N.C. App. 620, 478 S.E.2d 248 (1996) in support of its argument. However, *National* is distinguishable from the instant case. In *National*, the Department of Transportation purchased property on which an advertising sign was located, then terminated the month-to-month lease. After the effective date of termination, the sign owner initiated an action for inverse condemnation. The trial court dismissed the sign owner's suit for lack of standing, holding that the interest in land was properly terminated *prior to* the filing of the action. Unlike the instant case, the plaintiff in *National* had no interest in the property at the time it commenced its action for inverse condemnation. We, therefore, overrule Transco's assignment of error.

**[4]** Establishing standing is just one step across the legal threshold that each litigant must cross in order to have the merits of his or her case heard. As this Court observed in *Texfi*, "One may have standing to assert a claim which the Court in its final analysis decides has no merit." *Texfi*, 44 N.C. App. at 269, 261 S.E.2d at 23. Accordingly, in evaluating the trial court's decision to grant Transco's motion for summary judgment, we must next determine whether any genuine

issue of material fact existed and whether Transco was entitled to judgment as a matter of law.

> Property may be condemned only for a public purpose, and the Judicial Branch of the government determines whether a taking is for a public purpose. The Legislative Branch decides the political question of the extent of the taking, and the courts cannot disturb such a decision unless the condemnee proves the action is arbitrary, capricious, or an abuse of discretion.

*City of Charlotte v. Cook*, 348 N.C. 222, 225, 498 S.E.2d 605, 607-08 (1998) (citations omitted). Here, the legislature has defined the extent of a permissible taking. *See* N.C. Gen. Stat. § 40A-3(a)(1) (Cum. Supp. 1997). Thus, the issues before this Court are whether the trial judge properly concluded that (1) the taking was for a public purpose and (2) the taking was neither arbitrary and capricious nor an abuse of discretion.

### (1) Public purpose

Whether a condemnor's intended use of property is for public use or benefit is a question of law for the courts. *See Carolina Telephone and Telegraph Co. v. McLeod*, 321 N.C. 426, 429, 364 S.E.2d 399, 401 (1988). The concept is flexible and adaptable to changes in society and governmental duty. *See id.* Transco condemned this property for the transport of natural gas between states and the distribution of natural gas within North Carolina. Doing so is authorized by N.C. Gen. Stat. § 62-190. The trial court properly concluded that the taking was for a public purpose.

### (2) Arbitrary and capricious and abuse of discretion

"The words 'arbitrary' and 'capricious' have similar meanings, generally referring to acts done without reason or in disregard of the facts." *State ex rel. Utilities Comm. v. Mackie*, 79 N.C. App. 19, 28, 338 S.E.2d 888, 895 (citing *In re Housing Authority of Salisbury*, 235 N.C. 463, 70 S.E.2d 500 (1952)), *disc. review allowed*, 316 N.C. 557, 344 S.E.2d 16, *disc. review on additional issue allowed*, 316 N.C. 557, 344 S.E.2d 17 (1986), *and aff'd as modified*, 318 N.C. 686, 351 S.E.2d 289 (1987). Determination of whether conduct is arbitrary and capricious or an abuse of discretion is a conclusion of law. *See, e.g., Dept. of Transportation v. Overton*, 111 N.C. App. 857, 861, 433 S.E.2d 471, 474, *disc. review allowed*, 335 N.C. 237, 439 S.E.2d 144 (1993), *and disc. review improvidently granted*, 336 N.C. 598, 444 S.E.2d 448 (1994).

TRANSCONTINENTAL GAS PIPE LINE CORP. v. CALCO ENTER.

[132 N.C. App. 237 (1999)]

NCEC alleges that Transco's failure to seek variances from the setback requirements of local zoning ordinances led to condemnation of excess property and that Transco's public purpose could have been achieved through less intrusive means. However, for the condemnation to have been arbitrary, capricious, and an abuse of discretion, a court must find, as a matter of law, that the acts were done without reason or in disregard of the facts. *See In re Housing Authority*, 235 N.C. 463, 70 S.E.2d 500 (1952). Even where less intrusive means of accomplishing the public purpose exist, a condemnation will not be invalidated when the taking is not arbitrary and capricious and is necessary to accomplish the purpose. *See Charlotte v. Cook*, 348 N.C. 222, 498 S.E.2d 605 (where the court upheld a fee simple condemnation even though an easement would have potentially sufficed). Therefore, we hold that the trial court properly decided Transco's taking was not arbitrary and capricious nor an abuse of discretion.

Because Transco's taking was for a public purpose and was neither arbitrary and capricious nor an abuse of discretion, the trial court found that Transco was entitled to judgment as a matter of law on the substantive issues. We cannot say this finding is erroneous. Thus, these assignments of error are overruled.

**[5]** NCEC next contends that the order granting summary judgment deprived NCEC of its statutory right to appeal. Under the provisions of N.C. Gen. Stat. § 40A-28(c) (1984), "A judge in session shall hear and determine all matters in controversy and, . . . shall determine any issues of compensation to be awarded in accordance with the provisions of Article 4 of this Chapter." However, once the matter is appealed, it comes before the judge *de novo*. *See Durham v. Davis*, 171 N.C. 305, 88 S.E. 433 (1916). The parties did not dispute the facts before the court, and the matters in controversy were matters of law. Because the appeal comes before the trial court as a civil matter *de novo*, Rule 56 of the North Carolina Rules of Civil Procedure permits summary judgment. Accordingly, this assignment of error is overruled.

**[6]** NCEC finally contends that the court erred in denying its motion for summary judgment. We disagree. The core of NCEC's argument is that Transco condemned excess property in order to comply with a zoning setback requirement, that Transco could have, but did not, pursue alternatives such as a variance, and that the taking was therefore excessive and in bad faith. North Carolina courts have given private condemnors discretion in acquiring property reasonably neces-

sary to carry on the enterprise, absent a showing of bad faith or abuse of discretion. *See Power Co. v. Wissler,* 160 N.C. 269, 76 S.E. 267 (1912); 26 Am. Jur. 2d *Eminent Domain* §§ 30, 31 (1996). To prevail on its summary judgment motion, NCEC would have to establish that there is no evidence in opposition to its allegation that Transco was condemning the property in bad faith. In fact, there was substantial evidence to contradict NCEC's claim and to support Transco's contention that it was acting in good faith. This assignment of error is overruled.

Affirmed.

Judge HORTON concurs.

Judge WYNN concurs with separate opinion.

Judge WYNN concurring with separate opinion.

Although I agree with the majority's resolution of this matter, I separately concur because I do not believe that we needed to consider the merits of the North Carolina Equipment Company's ("NCEC") claim. Specifically, I find that NCEC lacked standing to contest the condemnation because as a month-to-month tenant it lacked a constitutionally sufficient interest in the property.

When analyzing issues of standing, this Court must focus on "whether the litigant is entitled to have the court decide the merits of the dispute of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 45 L. Ed. 2d. 343, 348 (1975). Indeed, standing does not focus upon the merits of the action, but rather is a necessary preliminary jurisdictional requirement which demonstrates that a litigant is entitled to judicial action. *See Allen v. Wright,* 468 U.S. 737, 750, 82 L. Ed. 2d 556 (1984).

Constitutionally, a plaintiff can only have standing if it satisfies the "case or controversy" requirement of Article III of the Constitution of the United States. *See Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 35 L. Ed. 2d 536 (1973). Under Supreme Court precedent, a plaintiff satisfies the Article III standing requirement if it meets a three-pronged test: (1) the plaintiff must have suffered "injury in fact"; (2) there must be a casual connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *See Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 559, 119 L. Ed. 2d 351, 354 (1992). The plaintiff bears the burden of establishing these three elements. *See Burton v. Central Interstate LLRWC Comm'n,* 23 F.3d 208, 209 (8th Cir. 1994).

Additionally, the Supreme Court has articulated three prudential limits on standing. First, courts should not adjudicate abstract questions of wide public significance which amount to generalized grievances. *See Valley Forge v. Americans United,* 454 U.S. 464, 474, 70 L. Ed. 2d 700, 709 (1982). Second, the plaintiff's complaint must fall within the zone of interest to be protected or regulated by the statute in question. *Id.* Lastly, the plaintiff must assert his own legal rights and interests, and cannot rest his claim on the legal rights of others. *Id.* It is this last prudential concern that is at issue in the case *sub judice.*

"Ordinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party." *Barrows v. Jackson,* 346 U.S. 249, 255, 97 L. Ed. 1586 (1953). There are two reasons for this limitation. First, courts should not unnecessarily adjudicate such rights, and it may be that the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. *See Ashwander v. TVA,* 297 U.S. 288, 345-48, 80 L. Ed. 688 (1936). Second, our judicial system depends upon effective advocacy which is best achieved when the party with the greatest stake in the outcome of a judicial decision litigates it. *See Singleton v. Wuff,* 428 U.S. 106, 49 L. Ed. 2d 826 (1976). That is, our judicial system is best served when the third party itself acts as a proponent for its own rights. *Id.* I note that the two exceptions to this rule—when the parties rights are inextricably bound and when the third party cannot assert his own right—are inapplicable here.

In the case *sub judice,* Calco, the owner of the condemned property is the real party in interest. Admittedly, NCEC, as a month-to-month tenant on the property, has some interest in whether Calco's property is properly condemned. This interest, however, is *de minimis* and therefore does not confer standing upon NCEC.

This case is similar to *State v. Joyner,* 286 N.C. 366, 211 S.E.2d 320 (1975), where the defendant-lessee contended that an ordinance was unconstitutionally applied to him because it equated to a taking of his property for a public purpose without compensation. Our Supreme Court, in rejecting this argument, stated that because the lessee had only a three-year lease term, "[t]he interference by the city

with defendant's vested rights in his leasehold was . . . minimal." *Id.* at 375, 211 S.E.2d at 326. Accordingly, if a three-year lease term is considered too minimal to constitute a compensable interest, NCEC's one-month term is undoubtedly a *de minimis* interest. Although the Court in *Joyner* failed to address the issue of standing, the fact that the Court considered a three-year lease term to constitute a minimal interest is persuasive in the case *sub judice.* Specifically, it implicitly holds that a party with a leasehold interest does not have a constitutional interest in the lessors property.

In sum, I would find that NCEC lacks a sufficient interest in the property and in reality is attempting to assert Calco's rights in this action. Therefore, NCEC is not the real party in interest and the lower court's decision should be affirmed on the basis of NCEC's lack of standing.