SCR-Tech LLC v. Evonik Energy Servs. LLC, 2014 NCBC 71.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 16632

SCR-TECH LLC,                              )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )
                                           )
EVONIK ENERGY SERVICES LLC,                )          **ORDER**
EVONIK ENERGY SERVICES                     )
GMBH, EVONIK STEAG GMBH,                    )
HANS-ULRICH HARTENSTEIN, and               )
BRIGITTE HARTENSTEIN,                      )
                                           )
            Defendants.                    )
                                           )

{1}      THIS MATTER is before the Court on Defendants' Motion to Dismiss
the Trade Secret Claims Based on Plaintiff's Lack of Standing or, in the Alternative,
for Partial Summary Judgment ("Motion") pursuant to Rules 12(b)(1) and 56(c) of
the North Carolina Rules of Civil Procedure ("Rule(s)").

> *King & Spalding LLP by Timothy G. Barber, Natasha H. Moffitt, Antonio E. Lewis, David Glen Guidry, John W. Harbin, and Mary Katherine Bates for Plaintiff SCR-Tech, LLC.*
>
> *Troutman Sanders LLP by Samuel T. Reaves and Hamilton Martens Ballou & Carroll, LLC by Beverly A. Carroll for Defendants Steag Energy Services, LLC, Hans-Ulrich Hartenstein, and Brigitte Hartenstein.*
>
> *Bryan Cave, LLP by Mark Vasco, Benjamin F. Sidbury, and Christina Davidson Trimmer and Alston & Bird, LLP by M. Scott Stevens for Defendants Steag Energy Services GmbH and Steag GmbH.*

Gale, Chief Judge.

{2}     The central issue the Motion presents is whether Plaintiff SCR-Tech LLC ("SCR-Tech") has standing to pursue claims for trade secret misappropriation where it is a licensee rather than an "owner" of the proprietary technology on which the trade secret claims are presented.  The issue arises because the North Carolina Trade Secrets Protection Act (the "Act") provides that "[t]he *owner* of a trade secret shall have remedy by civil action for the misappropriation of his trade secret."  N.C. Gen. Stat. § 66-153 (2014) (emphasis added).  The Act varies in this regard from the Uniform Trade Secrets Act ("Uniform Act") and the trade secret statutes of many states modeled on the Uniform Act, where the action may be brought by a "complainant."  Such statutes modeled on the Uniform Act have been interpreted not to restrict an action for misappropriation to an "owner."  *E.g., DTM Research, LLC v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001) (interpreting Maryland law).

{3}     The issue is compounded by the fact that the Act does not include any definition of "owner."  No reported North Carolina case has addressed whether, in North Carolina, an exclusive licensee can bring an action for trade secret misappropriation or how the statutory term "owner" should be defined.  In a footnote, the North Carolina Pattern Jury Instructions note that the Act protects trade secret owners, but then states that "[p]resumably" that includes a bona fide licensee."  N.C.P.I. Civil 813.92 n.2.  The Court is aware of no guiding legislative history.

{4}     Plaintiff contends that the term "owner" should not be restricted to merely one who holds legal title, which it admits it does not, but rather that it should be more broadly read to include an exclusive licensee like itself who possesses and uses the underlying technology in a non-transitory way and, in fact, continues to develop and improve the technology.  (Pl. SCR-Tech LLC's Br. Opp'n Defs.' Mot. Dismiss the Trade Secret Claims Based on Pl.'s Lack of Standing or, in Alternative, for Partial Summ. J. ("Pl. Opp'n Br.") 14.)  Defendants instead contend that the North Carolina Legislature's choice to restrict actions to an owner must be strictly construed and excludes an exclusive licensee. (Br. Supp. Defs.' Mot. Dismiss

Trade Secret Claims Based on Pl.'s Lack of Standing, or, in Alternative, for Partial Summ. J. ("Defs. Supp. Br.") 8–9 (citing License Agreement § 3.1).)

{5} While the Court has thoroughly considered the parties' extensive, thorough and well-written briefs on the present motion, it has also revisited the extensive briefing that preceded Judge Tennille's ruling on an earlier motion. In 2010, Defendants filed a Joint Motion for Summary Judgment on Issues of Statute of Limitations, Release, and Lack of Standing ("First Motion"). The First Motion asserted, as does the present Motion, that only an "owner" has standing to bring a trade secret misappropriation claim. The parties fully briefed case authorities and policy arguments as to whether SCR-Tech could qualify as an "owner" within the meaning of the Act when it is an exclusive licensee. After this full briefing, Judge Tennille summarily denied the First Motion. *SCR-Tech LLC v. Evonik Energy Servs. LLC*, Court Order at ¶ 1, 08 CVS 16632 [Mecklenburg] (N.C. Super. Ct. July 12, 2010).

{6} The essential background facts are these. In January 2004, Catalytica Energy Systems, Inc. ("Catalytica") purchased SCR-Tech GmbH and, consequently, SCR-Tech. Under the transaction, Catalytica's subsidiary, CESI-SCR, Inc. ("CESI-SCR"), acquired SCR-Tech's intellectual property rights. (Supplemental Interrogs. Resps. No. 4.) Sometime after that, CESI-SCR assigned its rights in the intellectual property to CESI-Tech Technologies, Inc. ("CESI-Tech"). CESI-Tech changed its name several times and is now known as CoaLogix Technologies Holdings, Inc. ("CoaLogix"). (Pl.'s Second Supplemental Resp. to German Defs.' Interrog. No. 4 ("Second Supplemental Interrog. Resp.").) CoaLogix presently owns the trade secrets at issue. SCR-Tech has an exclusive right to use the trade secrets within the power generation field. (License Agreement §§ 1.4, 2.1(a).) SCR-Tech "acknowledges and agrees that [CoaLogix] owns and shall continue to own all right, title and interest in and to the Technology, including, without limitation, all . . . trade secret and other intellectual property rights in the Technology[.]" (License Agreement § 3.1). The license expires on December 21, 2017, but automatically

renews for a one-year period unless it is otherwise terminated. (License Agreement § 1.10.)

{7}     During briefing on the First Motion, SCR-Tech acknowledged that it was a licensee of the technology. SCR-Tech produced its 2007 License Agreement with CESI-Tech on November 5, 2013. The Court understands that the agreement was not actually executed in 2007, but its terms have controlled the relationship between the parties since 2007, prior to the filing of this action.

{8}     On January 3, 2014, Defendants filed the present Motion. As they did in the First Motion, Defendants assert that Plaintiff lacks standing and seeks to dismiss the trade secret claims on that basis. The Motion has been fully briefed and argued. The arguments and legal principles in the briefs on the present Motion essentially repeat those presented to Judge Tennille in connection with the First Motion. Although Judge Tennille did not expound on his view of these arguments in his order denying the First Motion, they were clearly before him.

{9}     Plaintiff contends that the Court should not now further consider the arguments which Judge Tennille rejected. Plaintiff invokes the rule that one superior court judge cannot overrule another, relying on *Huffaker v. Holley*, 111 N.C. App. 914, 915, 433 S.E.2d 474, 475 (N.C. Ct. App. 1993).

{10}    Defendants counter that this rule has no application when the underlying issue addresses the Court's subject matter jurisdiction, citing *Transcontinental Gas Pipe Line Corp. v. Calco Enterprises*, 132 N.C. App. 237, 241, 511 S.E.2d 671, 675 (1999)) and *McAllister v. Cone Mills Corp.*, 88 N.C. App. 577, 579, 364 S.E.2d 186, 188 (1988)).[1]

---

[1]  There is a separate corollary that a subsequent superior court judge may also revisit a prior ruling where there have been "changed circumstances," but Judge Bledsoe recently held in a well-reasoned opinion that the reassignment of a case from one Business Court judge to another because of retirement does not constitute such a change in circumstances. *Taidoc Tech. Corp. v. OK Biotech Co., Ltd.*, 2014 NCBC LEXIS 49, at *13 (N.C. Super. Ct. Oct. 9 2014). Consistent with the holding, this Court determines that it does not have authority to revisit Judge Tennille's earlier order solely because of his retirement, and the reassignment of the case to the undersigned was not a "changed circumstance."

{11}    A plaintiff's standing is a necessary prerequisite to involving the court's subject matter jurisdiction. *Woodring v. Swieter*, 180 N.C. App. 362, 366, 637 S.E.2d 269, 274 (2006); *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 390–91, 617 S.E.2d 306, 310 (2005). Whether a party has standing is question of law for the court. *Lee Ray Bergman Real Estate Rentals v. N.C. Fair Hous. Ctr.*, 153 N.C. App. 176, 179, 568 S.E.2d 883, 885 (2002). And, it is generally true that "[a]n objection to subject matter jurisdiction may be made at any time during the course of the action." *Vance Constr. Co. v. Duane White Land Corp.*, 127 N.C. App 493, 494, 490 S.E.2d 588, 589 (1997).

{12}    In *Transcontinental Gas*, 132 N.C. App. at 241, 511 S.E.2d at 675, the North Carolina Court of Appeals, on first reading appears to have adopted a blanket rule that a subsequent superior court judge may revisit a prior judge's ruling on standing because questions of the court's jurisdiction can always be revisited at any stage of the proceedings. There, the issue was whether the claim fell within the exclusive jurisdiction of the Industrial Commission by reason of the Workers' Compensation Act. A first judge rejected the jurisdictional attack when ruling on an early motion under Rule 12. A subsequent superior court judge found a lack of jurisdiction when granting a Rule 56 motion. Although the underlying issue on both rulings involved construction of the Worker's Compensation Act, the decision reflects that there was a more substantial record before the second judge. The opinion does not further elaborate as to how the more developed record was relevant to the ultimate determination. But, the North Carolina Court of Appeals unquestionably upheld the right of the second judge to grant the Rule 56 motion even though the ruling on jurisdiction effectively overruled the first judge's decision.

{13}    While acknowledging that the issue of subject matter jurisdiction can be examined at any time, *McAllister*, 88 N.C. App. at 579, 364 S.E.2d at 188, the Court does not believe the holding in *Transcontinental Gas* should be so rigidly applied as to allow a party to present to a second judge essentially identical arguments without significant new facts or changes in law or circumstances, inviting a different ruling because the first judge was wrong. Yet, that is the

situation with which the Court is confronted by the present Motion.  After carefully considering the briefs and arguments presented on both motions, the Court does not perceive any argument now presented as to why Plaintiff does not have standing under the Act that was not presented and fully briefed to Judge Tennille.  Moreover, the Court does not believe that the newly-submitted License Agreement affects this conclusion.  Facts and arguments presented to Judge Tennille are consistent with and are not materially altered in the present briefs and arguments by virtue of the License Agreement.

{14}    The Court does not read *Transcontinental Gas* and similar cases to allow or require a subsequent court to rule on a virtually identical argument presented to a prior judge.  Finding that to be the effect of the current Motion, the Motion is DENIED.

{15}    The Court is mindful of the significance of the standing issue, the uncertain question of how our appellate courts will ultimately interpret the North Carolina Legislature's unusual choice to restrict misappropriation claims to an "owner," and the fact that Judge Tennille denied the First Motion without substantial discourse on the issue.  But, the Court is equally mindful of the import of allowing or requiring one Business Court judge to revisit the earlier order of another Business Court judge without any material change in record, policy, or authorities.

{16}    Plaintiff suggested that any standing issue could be cured by adding CoaLogix as a party.  In light of the Court's ruling, it need not further consider the suggestion, as no formal motion to join CoaLogix, has been made.

IT IS SO ORDERED, this the 31st day of December, 2014.