IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-12

Filed 31 December 2024

Robeson County, No. 23-CVS-1337

NO LIMIT GAMES, LLC, Plaintiff,

v.

SHERIFF OF ROBESON COUNTY, NORTH CAROLINA, BURNIS WILKINS, in his official capacity; SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, EDDIE M. BUFFALOE Jr., in his official capacity; DIRECTOR OF THE NORTH CAROLINA STATE BUREAU OF INVESTIGATION, BOB SCHURMEIER, in his official capacity; DIRECTOR OF THE ALCOHOL LAW ENFORCEMENT BRANCH OF THE NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, BRYAN HOUSE, in his official capacity; TOWN OF PEMBROKE and COUNTY OF ROBESON, Defendants.

Appeal by Defendants from Order entered 20 June 2023 by Judge Michael A. Stone in Robeson County Superior Court. Heard in the Court of Appeals 12 June 2024.

*Rossabi Law Partners, by Gavin J. Reardon and Amiel J. Rossabi, for Plaintiff-Appellee.*

*Attorney General Joshua H. Stein, by Deputy Solicitor General James W. Doggett, Special Deputy Attorney General Tamika L. Henderson, and Special Deputy Attorney General Michael Bulleri, for Defendants-Appellants.*

HAMPSON, Judge.

**Factual and Procedural Background**

The Secretary of the North Carolina Department of Public Safety, the Director of the North Carolina State Bureau of Investigation, and the Director of the Alcohol

Law Enforcement Branch of the North Carolina Department of Public Safety (collectively State Defendants)[1], each in their official capacity, appeal from an Order on Motion for Preliminary Injunction entered in favor of No Limit Games, LLC (Plaintiff) enjoining the State Defendants, the Sheriff of Robeson County in his official capacity, the Town of Pembroke, and the County of Robeson (collectively, Defendants) from forcing or compelling removal of Plaintiff's video sweepstakes kiosks from businesses or facilities and from prosecuting persons in possession of Plaintiff's video sweepstakes kiosks. The Record before us tends to reflect the following:

Plaintiff is a North Carolina company holding itself out as selling consumer merchandise through its website "Youbux.com." As part of its business plan, Plaintiff operates, uses, and sells promotional video sweepstakes. These video sweepstakes utilize computer kiosks, generally placed in retail establishments owned by third parties. Plaintiff either operated or seeks to operate its video sweepstakes kiosks in locations in Robeson County.

On 9 May 2023, Plaintiff filed a Complaint in Robeson County Superior Court under the Declaratory Judgment Act against the State Defendants. On 19 May 2023, Plaintiff filed an Amended Complaint naming all Defendants. The Amended Complaint alleged Defendants had threatened enforcement action against Plaintiff's business. Plaintiff sought a Declaratory Judgment declaring its video sweepstakes is

---

[1] The Sheriff of Robeson County, in his official capacity, along with the Town of Pembroke and the County of Robeson, are not parties to this appeal.

not a prohibited gambling, lottery, or gaming product. Plaintiff also sought preliminary and permanent injunctive relief enjoining Defendants from removing Plaintiff's kiosks or prosecuting any person in possession of them.

The trial court held a hearing on Plaintiff's Motion for Preliminary Injunction, where Plaintiff presented as evidence two reports. The first is titled "Review and analysis of the NLG Skill System with Black Clover Terminal version 1.0.0.0 developed by No Limit Games, LLC," and describes the operation of the kiosks and games. The second report was prepared by Dr. Neil Mulligan and includes studies performed on game participants that analyze whether skill was involved in playing the games. Defendants presented the testimony of Agent Christopher Poole of the Alcohol Law Enforcement division of the Department of Public Safety, who was qualified as an expert and opined that chance predominated over skill in Plaintiff's games.

On 20 June 2023, the trial court issued its Order on Motion for Preliminary Injunction. In its Order, the trial court concluded Plaintiff had established a likelihood of success on the merits of its claim, that it would suffer irreparable harm if Defendants were permitted to take enforcement action against it, and that the equities favored a preliminary injunction. On the likelihood of Plaintiff's success on the merits, the trial court observed:

> [a]lthough the actual prize is determined by chance as is required for a sweepstakes, the actual prize is embedded in the sweepstakes entry itself, i.e., prior to any game play.

> As a result, the "vagaries of chance" are neither created nor determined by the game. The participant would be eligible for the same prize regardless [of] whether they redeemed it without game play . . . or with game play . . . .

The trial court concluded that Plaintiff's video sweepstakes did not violate N.C. Gen. Stat. § 14-306.4. In turn, the trial court granted Plaintiff a preliminary injunction prohibiting Defendants from forcing the removal of Plaintiff's kiosks from retail or other facilities, issuing warnings to facilities for using Plaintiff's systems, attempting to coerce any establishment into removing Plaintiff's kiosks, or prosecuting any person in possession of the kiosks.

On 27 June 2023, State Defendants filed Notice of Appeal. The State Defendants also moved the trial court to stay its preliminary injunction pending their appeal. The trial court denied the State Defendants' Motion to Stay on 1 August 2023. Defendants subsequently filed a Petition for Writ of Supersedeas in this Court requesting a stay of the Preliminary Injunction pending appeal. This Court issued the Writ of Supersedeas staying the trial court's Order pending appeal.

## Appellate Jurisdiction

This Court has jurisdiction to review interlocutory trial court orders granting "temporary injunctive relief restraining the State or a political subdivision of the State from enforcing the operation or execution of an act of the General Assembly." N.C. Gen. Stat. § 7A-27(b)(3)(f) (2023).

## Issues

The issues in this case are: (I) whether Plaintiff has standing to seek declaratory and injunctive relief; and (II) whether the trial court erred in granting a Preliminary Injunction in favor of Plaintiff on the basis Plaintiff's video sweepstakes game was predominantly a game of skill rather than chance.

## Analysis

In 2006, the General Assembly banned the operation of video poker and slot machines. N.C. Gen. Stat. § 14-306.1A (2023). Subsequently, businesses began to modify their machines to involve "sweepstakes," rather than direct betting, but using similar video gambling interfaces. *See Hest Techs., Inc. v. State ex rel. Perdue*, 366 N.C. 289, 291, 749 S.E.2d 429, 431 (2012). In response, the General Assembly passed additional legislation in 2008 and 2010. Section 14-306.3 criminalizes "server-based electronic game promotion[s]," and Section 14-306.4, the statute at issue in this case, more broadly prohibits promoting or conducting sweepstakes through the use of an "entertaining display:"

> Notwithstanding any other provision of this Part, it shall be unlawful for any person to operate, or place into operation, an electronic machine or device to do either of the following:
>
> (1) Conduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize.
>
> (2) Promote a sweepstakes that is conducted through the use of an entertaining display, including the entry process or the reveal of a prize.

N.C. Gen. Stat § 14-306.4(b).

Sweepstakes operators have mounted a series of challenges to Section 14-306.4 in our courts, first challenging the statute as an unconstitutional limitation on speech. *Sandhill Amusements v. State*, 219 N.C. App. 362, 724 S.E.2d 614, *rev'd,* 366 N.C. 323, 734 S.E.2d 570 (2012). Our Supreme Court held Section 14-306.14 regulates conduct, with only incidental burdens on speech, and the legislature had a rational basis for enacting the statute. *Hest Techs., Inc.,* 366 N.C. at 303, 749 S.E.2d at 439.

Following this, operators began modifying their products in attempts to avoid the prohibition of Section 14-306.4(b) and contesting its application to their games. So far, these challenges have been unsuccessful in our appellate courts. Before addressing the specific parameters of Plaintiff's game, it is helpful to review this line of cases as context for the present challenge.

The first of these challenges came in *State v. Spruill*, 237 N.C. App. 383, 765 S.E.2d 84, *disc. rev. denied,* 368 N.C. 258, 771 S.E.2d 326 (2015). In that case, the defendants were charged under Section 14-306.4(b) for operating a sweepstakes that used an entertaining display. Defendants offered computers with access to internet games with names such as "Keno" and "Lucky's Loot." *Id.* at 384, 765 S.E.2d at 86. Patrons, rather than purchasing tokens or paying money into the games, purchased "computer time." *Id.* at 385, 765 S.E.2d at 86. The games used a "pre-reveal" system, which displayed the amount of the prize a patron won prior to playing the game. *Id.* Upon completion of the game, the prize amount would be displayed again. *Id.* The

defendants argued that, because the prize was displayed before the game was played, it did not violate the statute's prohibition on revealing prizes through the use of an entertaining display. *Id.* at 386, 765 S.E.2d at 87. We rejected this argument, holding that entry and participation in the sweepstakes was a prerequisite to playing the video game, and the fact that the sweepstakes was conducted at the beginning of the game versus its end made no meaningful difference. *Id.* at 387, 765 S.E.2d at 87. The game was still a game of chance, attached to a video game display "which entices the patron to play." *Id.* We also noted that the pre-reveal feature had been added to the game specifically in an attempt to evade Section 14-306.4. *Id.* at 386, 765 S.E.2d at 87.

Sweepstakes operators continued to refine their products, adapting them to the language in our courts' decisions. Some of these operators, like Plaintiff in this case, filed claims under our Declaratory Judgment Act seeking a determination that their games were legal under Section 14-306.4.

We reviewed the first of these actions for declaratory judgment in *Sandhill Amusements, Inc. v. Sheriff of Onslow County,* 236 N.C. App. 340, 762 S.E.2d 666, *rev'd* 368 N.C. 91, 773 S.E.2d 55 (2015). The plaintiffs in that case, after their equipment was seized, sought a declaratory judgment holding their kiosks and marketing system were not prohibited by law. 236 N.C. App. at 344, 762 S.E.2d at 671. The plaintiffs provided electronic kiosks in which players received sweepstakes entries with the purchase of gift certificates and revealed whether they had won a

prize via a display similar to a slot machine, with three "reels" of symbols. *Id.* at 343, 762 S.E.2d at 670. The screen would then display either a losing combination or a combination which required players to "nudge" a symbol from the top or bottom row into the middle in order to win a prize. This Court's majority opinion declined to address the 14-306.4 issue, but on appeal our Supreme Court reversed the majority and adopted Judge Ervin's dissent, which set forth the "predominance" test that determines whether a video game machine violates Section 14-306.4. 368 N.C. 91, 773 S.E.2d 55 (2015). Judge Ervin determined that, because the plaintiffs' equipment "involve[d] the use of electronic devices to engage in or simulate game play based upon which a participant may win or become eligible to win a prize," the only way for them to avoid running afoul of 14-306.4(b) was if the game involved was dependent on skill or dexterity. 236 N.C. App. at 365, 762 S.E.2d at 683 (Ervin, J, dissenting). "[T]he essential difference between a game of skill and a game of chance for purposes of our gambling statutes, including N.C. Gen. Stat. 14-306.4, is whether skill or chance determines the final outcome and whether chance can override or thwart the exercise of skill." *Id.* at 369, 762 S.E.2d at 685 (citing *Collins Coin Music Co. of N.C., Inc. v. N.C. Alcoholic Beverage Control Comm'n*, 117 N.C. App. 405, 409, 451 S.E.2d 306, 308 (1994)). Even assuming that "nudging" involved skill or dexterity, whether or not the player even had the opportunity to nudge depended entirely on chance. He noted that the pool of winners could be exhausted before a player played the game, giving them no opportunity to win a prize regardless of their skill or dexterity. *Id.* at

369, 762 S.E.2d at 685-86. Accordingly, the element of chance dominated the element of skill in the operation of the plaintiffs' machines. *Id.* at 370, 762 S.E.2d at 686.

In *Crazie Overstock Promotions, LLC v. State*, the plaintiff sold discount goods through its website and maintained computers in retail establishments which allowed customers to place orders. 377 N.C. 391, 392, 858 S.E.2d 581, 582 (2021). Customers could purchase gift certificates at these retail establishments, and also received 100 "Game Points" per dollar spent on gift certificates. *Id.* at 393, 858 S.E.2d at 582. Game Points could be used at the plaintiff's computers to play reel-spinning games, similar to a slot machine, in which the patron received a number of "Reward Points" determined by chance. *Id* at 393, 858 S.E.2d at 583. Rather than the "nudging" game from *Sandhill*, players then were required to play a "Dexterity Test" to convert Reward Points into "Dexterity Points" that could be exchanged for cash. *Id.* at 394, 858 S.E.3d at 583. The Dexterity Test involved the use of a simulated stopwatch counting from 0 to 1,000, which players attempted to stop as close to 1,000 as possible. *Id.* A player's score in the Dexterity Test determined which percentage of their reward points would be converted to Dexterity Points. Although the Dexterity Game viewed in isolation involved purely skill or dexterity, the amount of money a customer could win was determined entirely by the outcome of the Reward Game, a game of chance. *Id.* at 404, 858 S.E.2d at 589. Accordingly, the Court held "luck is so 'inherent in the nature of Crazie Overstock's games' that chance necessarily predominates over the exercise of skill and dexterity" and they were therefore

prohibited under Section 14-306.4. *Id.* at 404, 858 S.E.2d at 590 (citing *State v. Gupton*, 30 N.C. 271, 274 (1848). The Court emphasized that the inquiry is not solely whether skill or dexterity is involved in the game, but "whether skill or dexterity *actually* give the player the ability to control the extent to which he or she receives a prize and the value of the prize that he or she wins rather than merely reflecting whether the player bests the odds of winning in a game of chance." 377 N.C. at 403, 858 S.E.2d at 589.

In *Gift Surplus, LLC v. Cooper*, the *Sandhill* plaintiffs returned to the Supreme Court. 380 N.C. 1, 868 S.E.2d 20 (2022). After the Court in *Sandhill* reversed the order granting their preliminary injunction, the plaintiffs modified their games and the trial court declared their products as modified did not violate Section 14-306.4 and were lawful. 380 N.C. at 5, 868 S.E.2d at 22. The plaintiffs had made two changes to their reel-spinning games. First, they attempted to address Judge Ervin's observation that players could play the game even after the prizes had been exhausted by adding a "winner-every-time" modification. *Id.* With this feature, on the 75% of spins where players formerly would not win any prize, they were now awarded a nominal prize of a few cents. *Id.* Second, they attempted to increase the dexterity involved in the game with a "double nudge" feature that required players to nudge two symbols into place rather than one. *Id.*

Our Supreme Court rejected the plaintiffs' arguments that these modifications rendered the game legal under Section 14-306.4. It held the "winner-every-time"

feature did not alter the game such that skill or dexterity predominates over skill, because chance still determined how much a player was playing for on each spin, and the prize available did not depend on skill or dexterity. *Id.* The Court also held that the "nudging" aspect of the game also did not make skill predominate. The skill required to nudge a reel up or down is *de minimis* and, even assuming a meaningful level of skill or dexterity was involved, chance would always predominate because chance determines the relative winnings for which a player can play, making it "override or thwart the exercise of skill." *Id.* at 14, 868 S.E.2d at 29 (citing *Sandhill*, 236 N.C. App. at 369, 762 S.E.2d at 685). When viewed in its entirety, the results of the game varied primarily with the vagaries of chance rather than the player's skill and dexterity. *Id.* at 15, 868 S.E.2d at 30. Accordingly, the game violated Section 14-306.4(a)'s prohibition on video sweepstakes. *Id.*

I.    Standing

Defendants argue Plaintiff lacked standing to bring this action. As discussed above, this Court and our Supreme Court have reviewed several cases under identical postures: declaratory judgment actions seeking to enjoin enforcement of Section 14-306.4. *See, e.g., Crazie Overstock*, 377 N.C. 391, 858 S.E.2d 581; *Gift Surplus, LLC,* 380 N.C. 1, 868 S.E.2d 20. While Defendants note that standing was not at issue in those cases, standing is an aspect of subject matter jurisdiction and may be raised at any stage of a case, including *sua sponte* by a reviewing court. *Transcon. Gas Pipe Line Corp. v. Calco Enterprises*, 132 N.C. App. 237, 241, 511 S.E.2d 671, 675 (1999).

"When a plaintiff has a property interest which may be adversely affected by the enforcement of the criminal statute, he may maintain an[] action under the Declaratory Judgment Act to determine the validity of the statute in protection of his property rights." *Jernigan v. State,* 279 N.C. 556, 561, 184 S.E.2d 259, 264 (1971). Accordingly, our courts have reviewed numerous actions in which purveyors of gaming equipment sought declaratory judgments declaring their products legal, both under Section 14-306.4 and other gambling statutes. *See, e.g., Am. Treasures, Inc. v. State,* 173 N.C. App. 170, 176, 617 S.E.2d 346, 350 (2005) (holding trial court's exercise of jurisdiction in issuing declaratory judgment determining whether the plaintiff's phone card scheme was an illegal gambling arrangement was a proper exception to general rule against invoking equity to interfere with criminal prosecutions). Defendants, however, argue that our Supreme Court's decision in *Comm. to Elect Dan Forest v. Emp. Pol. Action Comm.*, 376 N.C. 558, 853 S.E.2d 698 (2021), requires Plaintiff show that a relevant statute confers a cause of action and Plaintiff failed to do so.

Defendants' argument misreads the Court's language in *Comm. to Elect Dan Forest*, which broadens our recognition of standing rather than narrowing it. In that case, the Court held, under the North Carolina Constitution, a plaintiff may assert a claim without showing that he suffered the type of "injury-in-fact" required by the United States Constitution. 376 N.C. at 609, 853 S.E.2d at 734. A legal injury on its own is sufficient. *Id.* at 608, 853 S.E.2d at 733. Our Supreme Court explained that in

NO LIMIT GAMES, LLC V. SHERIFF OF ROBESON COUNTY

claims like the one at issue in that case, where the legislature has created a cause of action, the plaintiff only needs to show "a relevant statute confers a cause of action" and that "the plaintiff satisfies the requirements to bring a claim under that statute." *Id.* at 599, 853 S.E.2d at 727. Defendants attempt to broaden this rule to create additional pleading requirements for all lawsuits "where statutory issues . . . are at issue."

*Comm. to Elect Dan Forest* does not address this type of case, and our Supreme Court has decided multiple cases in an identical posture to this case following that decision. *See Gift Surplus, LLC v. State*, 380 N.C. 1, 868 S.E.2d 20; *Crazie Overstock Promotions, LLC v. State*, 377 N.C. 391, 858 S.E.2d 681 (2021). Plaintiff has standing to bring this action.

II.    Legality of Plaintiff's game under Section 14-306.4

A preliminary injunction "will be issued only (1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Ridge Cmty. Inv., Inc. v. Berry,* 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). We review orders granting preliminary injunctions *de novo*, but because the trial court's ruling is presumed to be correct, the party challenging the order bears the burden of showing it was erroneous. *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 465, 579 S.E.2d 449, 452 (2003). In this case, the question is whether

Plaintiff is likely to succeed in its claim for a declaratory judgment declaring that its products do not violate N.C. Gen. Stat § 14-306.4.

In determining whether a game violates Section 14-306.4, we look to whether chance or skill predominates the other in determining the result of the game:

> [T]he relevant test for use in determining whether the operation of an electronic gaming device does or does not violate N.C.G.S. § 14-306.4(a) is whether, viewed in its entirety, the results produced by that equipment in terms of whether the player wins or loses and the relative amount of the player's winnings or losses varies primarily with the vagaries of chance or the extent of the player's skill and dexterity.

*Gift Surplus*, *LLC,* 380 N.C. at 10, 868 S.E.2d at 26-27 (citing *Crazie Overstock*, 377 N.C. 391, 858 S.E.2d 581)**.** Plaintiff argues that the trial court made extensive findings that the games are games of skill and that Defendants have not challenged that finding. However, the determination of whether chance or skill predominates in a game is a mixed question of law and fact that we review *de novo* when there is no factual dispute about how the game is played. *Gift Surplus, LLC*, 380 N.C. at 11, 868 S.E.2d at 27.[2]

In order to play Plaintiff's game, players purchase "YouBux" gift certificates

---

[2] Plaintiff argues that Defendants mischaracterize the gameplay in multiple ways that are at odds with the factual findings of the trial court. However, "on appeal from an order of superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *Ridge Cmty. Inv., Inc.*, 293 N.C. at 701, 239 S.E.2d at 574. More importantly, none of the distinctions drawn by Plaintiff are relevant to our analysis of whether chance predominates over skill in determining the outcome of the game, and our analysis remains the same adopting the trial court's factual findings as our own.

and, for each dollar spent, they receive 100 sweepstakes entries that may be redeemed at Plaintiff's kiosks. These sweepstakes entries are, upon purchase, associated with a specific outcome: either the entry is a "loser" or is associated with a specific cash prize. However, the player must "reveal" the outcome of their winning entries in order to receive the associated prize.

To reveal their Sweepstakes Entries, players select one of eleven "Art Themes," or games, with names such as "Lucky Leprechaun," "Welcome to Vegas Royale," or "Emerald 7's." Players also select how many Sweepstakes Entries they wish to redeem. If the redeemed sweepstakes entries contained any winning outcomes, players may reveal those outcomes in one of two ways.

Under the first method, players play a graphical game similar to that in *Crazie Overstock* and *Gift Surplus*, in which three reels of symbols spin and then stop, displaying three rows of symbols. Players must "nudge" one symbol into place in order to create a winning combination. Players have five seconds to complete this nudging task or they forfeit their winning entry.

Alternatively, players may elect to use an "instant reveal" function to immediately show if any of their sweepstakes entries are winners and what prizes they award. This method does not involve gameplay: players simply select the number of sweepstakes entries they wish to reveal, and then are shown if and what they won. Players who elect to use the Instant Revealer are not required to perform any nudging task.

If there were no winning outcomes among the sweepstakes entries redeemed, the player is given the option to play "Follow-Me." This is a memory matching game involving eight colored buttons that light up in a random sequence. The player must repeat the sequence for fourteen rounds, with the first round involving one button and each subsequent round adding another button to the sequence. Successful completion of all fourteen rounds of the Follow-Me game rewards the player with a number of new sweepstakes entries equivalent to the number redeemed.

Plaintiff's game involves a sweepstakes whose results are revealed via an entertaining display. Accordingly, the only remaining inquiry to determine its legality under Section 14-306.4 is whether chance or skill predominate in determining the results of the game:

> As a result, given that the equipment and activities protected by the preliminary injunction clearly involve the use of electronic devices to engage in or simulate game play based upon which a participant may win or become eligible to win a prize, the only basis upon which Plaintiffs' equipment and activities can avoid running afoul of N.C. Gen. Stat. § 14-306.4(b) is in the event that the game or simulated game involved is 'dependent on skill or dexterity.'

*Sandhill*, 236 N.C. App. at 365, 762 S.E.2d at 683 (Ervin, J., dissenting).

In this case, the game appears to be identical in many respects to those held by our Supreme Court in *Gift Surplus* and other cases to be illegal under Section 14-306.4: a player enters the game, their prize is determined by chance, and they must perform a dexterity task to receive the prize. Although dexterity and skill may be

involved in a portion of the game, "when chance determines the relative winnings for which a player is able to play, chance can override or thwart the exercise of skill." *Gift Surplus, LLC*, 380 N.C. at 14, 868 S.E.2d at 29. Plaintiff argues that certain specific attributes of its game distinguish it from those previously held illegal under Section 14-306.4. We disagree.

First, Plaintiff argues that its game is not prohibited under Section 14-306.4 because the prize available to the player is determined prior to any video gameplay, and therefore playing the game does not determine whether a player has a winning or losing entry. Plaintiff's argument ignores the plain text of the statute: Section 14-306.4(b) not only proscribes the use of an entertaining display to enter the sweepstakes and determine the result, but it also prohibits the use of such a display for the "reveal of a prize." N.C. Gen. Stat. § 14-306.4(b)(1). The fact that the available prize is determined upon the purchase of Youbux and receipt of the accompanying sweepstakes entries does not change the fact that it is revealed via an entertaining display. No matter when the results are determined, use of an entertaining display to reveal the prize is prohibited.

Nor does the existence of the "instant reveal" feature change our analysis. Plaintiff argues that the instant reveal function does not make use of an entertaining display because it involves no video gameplay and the instant reveal is unadorned. While Defendants argue that displaying sweepstakes results on a video monitor is by definition an entertaining display, we need not make this determination. Even

assuming the instant reveal feature does not make use of an entertaining display and is legal under Section 14-306.4, that option does not thereby render legal the other option available at the kiosk, which does use such an entertaining display to reveal prizes. The feature of the product by which sweepstakes prizes are revealed through an entertaining display remains illegal and prohibited by statute.

Plaintiff also argues that the "nudging" aspect of its game makes skill and dexterity predominate over chance. The game at issue in *Gift Surplus* involved a nearly identical nudging feature, which did not prevent our Supreme Court from holding that chance predominated skill. 380 N.C. 1, 15, 868 S.E.2d 20, 30. Regardless of how skilled at the nudging game a player is, chance always control the amount of money the player is playing for. Plaintiff attempts to distinguish its game by noting that players have only five seconds to "nudge" the symbols to create a winning combination, rendering the task more difficult. However, this argument ignores a crucial part of the decision in *Gift Surplus*: although the Court observed that the skill and dexterity required to "nudge" a reel up or down was *de minimis,* the holding did not depend on this:

> More fundamentally, even assuming there was a meaningful level of skill or dexterity involved in the game, chance would always predominate because, when chance determines the relative winnings for which a player is able to play, chance "can override or thwart the exercise of skill." As in *Crazie Overstock, LLC,* "the extent to which a customer is able to win more than a minimal amount of money is controlled by the outcome of Plaintiffs' games' initial real spin regardless of the level of skill and dexterity

> that the player displays while participating in nudging the
> reels."

*Gift Surplus, LLC,* 380 N.C. at 14, 868 S.E.2d at 29. Because chance determined the prize for which a player was playing for on each spin, chance predominated over skill in the game, even assuming the nudging game required a significant level of skill. The modifications to the nudging game presented by Plaintiff do not allow it to escape this paradigm, as the prize available to the player via a successful nudge is always determined by chance. Plaintiff briefly attempts to argue that the symbols "do not appear at random" because they symbols are determined at the time the sweepstakes entries are issued, and not by playing the game. This is a distinction without a difference, as the critical question is whether the result is determined by chance, not when that determination is made. We note as well that players in *Gift Surplus*, when a winning combination was available, successfully completed the nudging game between 86% and 90% of the time. 380 N.C. at 14, 868 S.E.2d at 29. The evidence provided by Plaintiffs in this case indicates that players succeeded 86% of the time. This evidences a similarly *de minimis* impact of skill or dexterity upon the results of the game.

The most prominent difference between Plaintiff's game and those at issue in earlier appellate decisions is the incorporation of the "Follow-Me" game. As described above, when a player plays a round of Plaintiff's game and no prize is revealed, they are given the opportunity to play a pattern matching game which, if successfully

played, rewards them with a refund of the sweepstakes entries wagered that round. This appears to be an attempt to address the observation, first made by Judge Ervin in *Sandhill*, that in similar games chance entirely determined whether players even received the opportunity to make use of their skill or dexterity. 236 N.C. App. at 369, 762 S.E.2d at 686 (Ervin, J., dissenting). Unlike in *Sandhill,* Plaintiff's game incorporates a dexterity element in each round a player plays.

However, this does not automatically render the game one in which skill or dexterity predominate over chance. For one, it is unclear that the task presented by the Follow-Me game is reasonably possible, even for a skilled individual. Research presented by Plaintiff showed that, on average, players completed 6.7 rounds of the game. Each subsequent round is progressively more difficult than the last, and a single error in any of the fourteen rounds causes a player to fail. The game cannot measure gradations of skill: either a player completes all fourteen rounds or they fail and receive no reward, regardless of how many rounds they completed. The final round of the Follow-Me game is over twice as long as the average round completed by players. While the research conducted by Dr. Mulligan included data about how often players successfully completed the nudging game, it notably did not include information as to how many, if any, participants managed to complete all fourteen rounds of Follow-Me. Giving players the option to complete an impossible task to receive an advantage in a game is effectively the same as having no dexterity element, because no amount of skill will make a difference in the outcome of the game. Plaintiff

has therefore not provided evidence that skill or dexterity, via the Follow-Me feature, predominate over chance in determining the results of the game.

Even assuming that Follow-Me is possible for players of sufficient skill, Plaintiff has not shown that skill or dexterity predominate chance as a result. The only prize players are playing for is a refund of the sweepstakes entries redeemed in that round of the game: effectively, an opportunity to play another round, in which the available prize is determined at random. While a player expressing a high amount of skill may receive a number of additional plays, the prizes a player can win each time always depends entirely on chance.

No amount of skill applied to the Nudge or Follow-Me portions of Plaintiff's game overrides this fundamental aspect: that, with each round played, "the relative amount of the player's winnings or losses varies primarily with the vagaries of chance." *Crazie Overstock,* 377 N.C. at 391, 858 S.E.2d at 581. In its Order, the trial court reasoned:

> Because: (a) unredeemed winning entries remain in the finite prize pool but (b) losing entries are removed from the sweepstakes pool as they are redeemed, at the beginning of each sweepstakes every participant is, in actual effect, able to compete for the top prize. That is, a participant who consistently employed the necessary level of skill throughout both scenarios would, eventually, eliminate all losing entries.

It is true that a player who was consistently successful at both the Nudge and Follow-Me games could, eventually, exchange a sweepstakes entry for each prize

available in the sweepstakes pool. This would require the redemption of a significant number of sweepstakes entries obtained from the purchase of Youbux, due to the nature of Plaintiff's game: even perfect play of the Follow-Me game does not refund all the losing entries a player reveals, because Follow-Me-is not available on every round. Players redeem multiple sweepstakes entries at a time: during each round of the game, players reveal the prize for a minimum of 25 and a maximum of 500 sweepstakes entries. If a single one of the revealed entries is associated with a prize, the player is unable to play Follow-Me, and each of the losing entries is therefore forfeited. A player who purchases $5.00 worth of Youbux and then redeems their 500 sweepstakes entries and receives any prize, no matter how small, cannot continue playing without purchasing more Youbux and receiving additional sweepstakes entries. Optimal play of the Follow-Me and Nudge portions of the game thus creates an effect similar to the "winner-every-time" feature in *Gift Surplus*: the player receives a prize on each spin, but the amount of that prize is always determined by chance. 380 N.C. at 5, 868 S.E.2d at 22.

Although a player could eventually exhaust the finite prize pool and with perfect play exchange sweepstakes entries for each of the available prizes, this does not nullify the role of chance in the playing of the game. This is for two primary reasons. First, beginning a game generates a pool of one million game outcomes. **[Doc. Ex. 9]** Players may exchange up to 500 sweepstakes entries at one time, requiring a minimum of two thousand spins to exhaust the prize pool. Second, the

- 22 -

total number of sweepstakes entries that must be redeemed to exhaust the prize pool varies based on the distribution of prizes. This is because the Follow-Me game is only available when *none* of the sweepstakes entries award a prize. This means that for the player, an ideal distribution of prizes would consist of each spin revealing either (1) a result indicating that all sweepstakes entries redeemed on that spin were winners, or (2) no prizes, allowing them to play Follow-Me and refund their sweepstakes entries. The further from this ideal distribution the results of the game are, the more sweepstakes entries from YouBux purchases must be redeemed in order to exhaust the pool.[3]

Plaintiff's game is exactly the type of electronic sweepstakes the legislature intended to prohibit by enacting Section 14-306.4: "[c]ompanies have developed electronic machines and devices to gamble through pretextual sweepstakes relationships with Internet service, telephone cards, and office supplies, among other products . . . such electronic sweepstakes systems utilizing video poker machines and other similar simulated game play create the same encouragement of vice and dissipation as other forms of gambling . . . by encouraging repeated play, even when allegedly used as a marketing technique." 2009 N.C. Sess. Laws, 408. None of

---

[3] For example, assume there are 1,000 winning entries in the pool of 1,000,000 results and a player chooses to reveal the maximum of 500 sweepstakes entries at a time. Under ideal results, and with 100% success at the Nudge and Follow-Me games, the player will exchange a total of 1,000 sweepstakes entries, obtained with the purchase of $10 worth of Youbux, for all available prizes. Under the least desirable prize distribution, in which each winning spin reveals only one winning entry, the player will ultimately exchange 500,000 sweepstakes entries, obtained with the purchase of $5,000 worth of Youbux, for the same prizes.

Plaintiff's attempts to distinguish its game from the similar games previously held by our courts to be illegal change the fact that chance is core to the game and always determines the amount a player can win.

Thus, chance predominates skill or dexterity in determining the outcome of Plaintiff's game. Therefore, Plaintiff has not shown a likelihood of success in its claim for declaratory judgment. Consequently, the trial court erred in granting Plaintiff's motion for a preliminary injunction.

## **Conclusion**

Accordingly, for the foregoing reasons, we reverse the Order of the trial court granting Plaintiff's Motion for Preliminary Injunction and remand this case to the trial court for further proceedings.

REVERSED AND REMANDED.

Judge WOOD concurs. Judge GRIFFIN dissents by separate opinion.

GRIFFIN, Judge, dissenting.

I agree with the majority that Plaintiff has standing to seek declaratory and injunctive relief. However, I would affirm the trial court's order granting Plaintiff's Motion for a Preliminary Injunction and hold Plaintiff's sweepstakes system complies with section 14-306.4 of the North Carolina General Statutes.

## I.    **Standard of Review**

As a threshold matter, I would give deference to the trial court's finding that skill predominates over chance. Plaintiff's understanding and presentation of their game materially differs from that of Defendants in ways fundamental to the analysis. In fact, Plaintiff lists four material mischaracterizations, two of which I believe alter the analysis:

> 1.  The instant reveal function does not use an entertaining display because it does not take the form of actual or simulated gameplay;
>
> 2.  There is never a time when the entry pool has no winning entries remaining[.]

The majority holds these differences are irrelevant to the analysis. I disagree because the first difference, whether the instant reveal function uses an entertaining display, if true, undermines the legality of Plaintiff's system. *See* N.C. Gen. Stat. § 14-306.4(b)(1) (2023). The second difference, whether there is ever a time the entry pool contains no winning entries, is material because it directly impacts the role that chance plays in determining which prize a participant may win.

As de novo review is only appropriate "when there is no factual dispute about how a game is played," I would hold the material disputes above warrant reviewing the trial court's order to determine whether the factfinder's determination that skill or dexterity dominate over chance was supported by competent evidence. *See Gift Surplus, LLC. v. State ex rel. Cooper*, 380 N.C. 1, 10–11, 868 S.E.2d 20, 27 (2022) (citations and internal marks omitted).

## II.   Analysis

Having established the correct standard of review is whether the trial court's findings were supported by competent evidence, I now address Plaintiff's argument that the trial court properly granted the preliminary injunction.

A preliminary injunction should be issued only "'(1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during [] litigation.'" *Providence Volunteer Fire Dep't v. Town of Weddington*, 253 N.C. App. 126, 140, 800 S.E.2d 425, 435 (2017) (quoting *Ridge Cmty. Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977)). Generally, we are "'not bound by the [trial court's] findings, but may review and weigh the evidence and find facts for [ourselves].'" *Id.* at 140, 800 S.E.2d at 435 (quoting *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 402, 302 S.E.2d 754, 760 (1983)). However, as the determination of whether chance or skill predominates in a game subject to section 14-306.4 is a mixed question of law

and fact, we only review "de novo when there is no factual dispute about how a game is played." *Gift Surplus, LLC.*, 380 N.C. at 11, 868 S.E.2d at 27 (citation omitted). Thus, where there is a factual dispute about how the game is played, de novo review is inappropriate and deference ought to be given to the trial court's findings.

The dispositive question which necessarily determines whether Plaintiff is likely to succeed on the merits of its claim is whether skill or chance predominates in their sweepstakes system. *Id.* at 10, 868 S.E.2d at 27 ("We reaffirm that the predominant-factor test is the applicable test for determining whether a video sweepstakes is conducted through a game of chance as prohibited under N.C.G.S. § 14-306.4.").

Section 14-306.4 "prohibits sweepstakes conducted through electronic machines using video games of chance." *Id.* at 7, 868 S.E.2d at 25. To determine whether a game is one of chance, as opposed to one of skill or dexterity, we look at:

> [W]hether, viewed in its entirety, the results produced by that equipment in terms of whether the player wins or loses and the relative amount of the player's winnings or losses varies primarily with the vagaries of chance or the extent of the player's skill and dexterity.

*Id.* at 10, 868 S.E.2d at 26–27 (quoting *Crazie Overstock Promotions, LLC. v. State*, 377 N.C. 391, 403, 858 S.E.2d 581, 589 (2021)). Thus, sweepstakes are prohibited if they are "conducted through the use of an entertaining display, but only when the electronic display takes the form of actual game play, or simulated game play where the game in question is not dependent on skill or dexterity." *Id.* at 9, 868 S.E.2d at

26 (citations and internal marks omitted). For section 14-304.6 to sweep Plaintiff's system within its scope, there must be some element of chance necessarily involved in the system. N.C. Gen. Stat. § 14-306.4(a)(5) ("'Sweepstakes' means any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance.").

The trial court, after receiving witness testimony and expert affidavits, found from competent evidence that:

> 99.    Farley's analysis established that there was no "element of chance" in either task that would "thwart" the participant's "exercise of skill or judgment." On the system as configured, a participant who consistently successfully completed all tasks would be able to eliminate losing entries until he had an opportunity to compete for all remaining available prizes.

This finding, and the legal conclusion that Plaintiff's sweepstakes is lawful, was bolstered by additional expert testimony in that "Dr. Mulligan's extensive statistical and analytical data to support his conclusions establishes that skill predominates with regard to both the Nudge challenge and the Follow Me challenge, and that the system exhibits no element of chance that would serve to thwart a participant's exercise of skill." Both findings were supported by affidavits of expert witnesses who completed in-depth studies and analysis of Plaintiff's sweepstakes system.

I would hold these findings sufficient to support the legal conclusion that Plaintiff established a likelihood of success on the merits. This is because the only

aspect of Plaintiff's sweepstakes system in which chance is present is during the initial entry, i.e., whether a specific entry is associated with a prize. The trial court hits the nail on the head in concluding that, at this point in the system, "the actual prize is determined by chance as is required for a sweepstakes, the actual prize is embedded in the sweepstakes entry itself, i.e., prior to any game play." *See* N.C. Gen. Stat. § 14-306.4(a)(5) ("'Sweepstakes' means any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance."). Where gameplay is present in Plaintiff's sweepstakes, skill allows the participant to control their fortune because, if a participant is skilled enough, they may successfully complete the Nudge challenge and win any associated prizes as well as the cash bonus.

Again, if skilled enough, a participant may earn additional sweepstakes entries through the Follow Me challenge if their initial entries were not associated with a prize. If a player utilizes the appropriate level of skill during the Follow Me challenge, they will be able to win a prize every time they play by exhausting the losing entries and limiting the pool to only prizes which they can earn through the exercise of skill in the Nudge challenge. This feature of Plaintiff's system distinguishes it from other systems held unlawful because it, in effect, rewards skilled participants with a prize every time they play.

The majority recognizes this: "It is true that a player who was consistently

5

successful at both the Nudge and Follow Me games could, eventually, exchange a sweepstakes entry each prize available in the sweepstakes game." However, they determine this outcome is undermined by the fact that a participant would need to redeem a significant number of entries to exhaust all losing entries to eventually claim each prize. They conclude from this that "[o]ptimal play of the Follow Me and Nudge portions of the game thus creates an effect similar to the 'winner-every-time' feature in *Gift Surplus*: the player receives a prize on each spin but the amount of that prize is always determined by chance." While correct in that our Supreme Court held "[i]f chance determines the prize for which players may play, then, as in the case of traditional slot machines, 'the return to the player is . . . dependent on . . . chance[,]'" *Gift Surplus, LLC.*, 380 N.C. at 13, 868 S.E.2d at 28 (citation omitted). I would hold the finite prize pool and the Follow Me challenge nullify the role of chance in determining the prize a participant plays for, or at the least minimize the extent that chance predominates over skill. This is because, as the majority states, "a player who was consistently successful at both the Nudge and Follow Me games could, eventually, claim each prize available in the sweepstakes game." The *de minimis* level of chance present is necessary for the system to fall into the definition of sweepstakes. Under this scheme, I would hold skill predominates over the amount of chance necessarily present in a sweepstakes.

I would also hold Plaintiff's system does not offend the plain language of section 14-306.4(b)(1). Section 14-306.4(b)(1) states that it shall be unlawful to

"[c]onduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize." N.C. Gen. Stat. § 14-306.4(b)(1). Plaintiff's system does not violate this prohibition as it does not necessarily require the use of an entertaining display to reveal a prize if the participant opts to use the instant reveal function. Thus, an entertaining display is one aspect of the system that a participant may choose to engage with, but is not required to use. Plaintiff's system, by providing participants with the option to go through the entire sweepstakes process without using an entertaining display and only using an entertaining display to provide participants with an opportunity to win an additional prize, does not offend the statute.

We acknowledge the legislature intended to cast a wide net in regulating electronic sweepstakes. N.C. Gen. Stat. § 14-306.4(c) ("It is the intent of this section to prohibit any mechanism that seeks to avoid application of this section through the use of any subterfuge or pretense whatsoever."). However, where, as here, a plaintiff is able to design a system which ultimately elevates skill over the chance inherent in a sweepstakes, I would hold they have complied with the law. To this end, I would also affirm the trial court's conclusion of law asserting the balance of equities tilts in Plaintiff's favor—thus warranting an injunction to prevent harm to Plaintiff and its business.

## III.   Conclusion

Because the legislative scheme requires the presence of chance in a

7

sweepstakes, I would hold Plaintiff's entire system elevates skill over chance by utilizing a finite prize pool from which losing entries are exhausted and potentially returned to a participant through the adequate exercise of skill. Thus, Plaintiff's sweepstakes provides the participant with the ability to win every time and therefore does not offend section 14-306.4.